UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SELINA KYLE,

                        Plaintiffs,

        v.

DONALD D. LEWIS,

                        Defendant.

Civil Action No. 20-cv-06142 (KPF)

**ORAL ARGUMENT
REQUESTED**

Hon. Katherine Polk Failla

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISQUALIFY WIGDOR LP

Donald D. Lewis
*Pro Se*
*87 Kings Point Road*
*Great Neck, NY 11024*
*516-441-2595*
*Donlewisdl87@gmail.com*
*Defendant*

Dated:    New York, New York
          September 24, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………....... iii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 5

   I.  WIGDOR, GOTTLIEB & PEARSON HAVE BEEN ACCUSED OF
      RACKETEERING AND EXTORTION BY ANOTHER PARTY .................................. 5

   II.  WIGDOR AMPLIFIES THE EXPOSURE OF JANE DOE & THIS ACTION; PIERCE
      BAINBRIDGE AND HECHT PARTNERS FOLLOW SUIT ........................................ 5

   III. WIGDOR APPEARS TO HAVE COORDINATED  WITH PIERCE  BAIINBRIDGE
      AND HECHT PARTNERS ........................................................................................... 7

   IV. PRE-FILING COMMUNICATIONS ............................................................................ 10

      A.   Wigdor Threat Letter to Lewis ............................................................................. 10

      B.   Lewis Responds to the Wigdor Threat Letter and Highlights the Conflict ........... 10

      C.   Wigdor Responds and Claims it Has No Conflict ................................................. 11

      D.   Conversation with Wigdor .................................................................................... 11

      E.   Conflict Letter to Wigdor ...................................................................................... 11

   V.  CONFIDENCES SHARED WITH GOTTLIEB ............................................................ 11

   VI. A FORMER PIERCE BAINBRIDGE ATTORNEY CALLS JANE DOE'S LIES INTO
      QUESTION .................................................................................................................. 13

   VII. WIGDOR MANIPULATES & DISTORTS CONFIDENCES SHARED BY LEWIS .. 13

      A.   Suggestion that Jane Doe Was Paid Off to Lie About Lewis ................................. 13

      B.   Wigdor Conveniently Drops the Lie That Lewis Somehow Put Jane Doe at Risk 15

      C.   Wigdor's Misconduct May Be Financially Incentivized ........................................ 17

*- Continued on Next Page -*

**ARGUMENT** ................................................................................................................ 17

    I.   DISQUALFICATION IS WARRANTED ..................................................... 18

        A.   Lewis Was a Client .................................................................... 18

        B.   The "Substantial Relationship" Test is Met............................ 19

        C.   Lewis Shared Confidences ....................................................... 20

    II.  WIGDOR CANNOT AVOID IMPUTATION ............................................ 21

    III. WIGDOR HAS NO DEFENSES ............................................................... 22

    IV. THE BALANCE OF EQUITIES FAVORS DISQUALIFICATION............................. 23

**CONCLUSION** ........................................................................................................... 23

## TABLE OF AUTHORITIES

*Arifi v. De Transport Du Cocher, Inc.*, 290 F. Supp. 2d 344 (E.D.N.Y. 2003). . . . . . . . . . . . . . . 20

*Chinese Auto. Distribs. v. Bricklin*, 2009 U.S. Dist. Lexis 2647 (S.D.N.Y. 2009) . . . . . . . .   20, 22

*Cresswell v. Sullivan & Cromwell*, 922 F.2d 60 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Crudele v. N.Y.C. Police Dep't*, 2001 WL 1033539 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . 21

*Decora Inc. v. DW Wallcovering, Inc.*, 899 F. Supp. 132 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . .22

*Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 563, 571 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . .21

*Fierro v. Gallucci* 2007 U.S. Dist. Lexis 89296 (EDNY 2007) . . . . . . . . . . . . . . .4, 18, 19, 20, 23

*Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.* 722 F. Supp. 2d 295 (E.D.N.Y. 2010) . . . .21

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*,
409 F.3d 127 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Huntington v. Great Western Resources, Inc.*, 655 F.Supp. 565 (S.D.N.Y. 1987) . . . . . . . . . . . .22

*In re I Successor Corp.*, 321 B.R. 640 (Bankr. S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Miroglio, s.p.a. v. Morgan Fabrics Corp.*, 340 F. Supp. 2d 510 (S.D.N.Y. 2004) . . . . . . . . . . . .18

*Mitchell v. Met. Life Ins. Co., Inc.*, 2002 WL 441194 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . 20, 21

*Papanicolaou v. Chase Manhattan Bank, N.A., 720 F. Supp. 1080* (S.D.N.Y. 1989) . . . . . . . . . . 22

*Rose Ocko Found., Inc. v. Liebovitz* 155 A.D.2d 426  (2nd Dept. 1989) . . . . . . . . . . . . . . . . . . . . . 19

*Seeley v. Seeley*, 129 A.D.2d 625, 627, 514 N.Y.S.2d 110 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . 19

*SMJY v. Conrail* 1982 U.S. Dist. Lexis 15458 (S.D.N.Y. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . .19

*T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265 (S.D.N.Y. 1953) . . . . . . . . . . . . . 20

*TufAmerica, Inc. v. Codigo Music LLC*  2013 U.S. Dist. Lexis 65777 (S.D.N.Y 2013) . . . . . . . . .18

*United States Football League v. National Football League*,
605 F.Supp. 1448 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19, 21

*Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir.) . . . . . . . . . . . . . . . . . . 18

*Yaretsky v. Blum*, 525 F. Supp. 24 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Rules**

DR 4-101(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

DR 5-108(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

New York Rule of Professional Conduct 1.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

Pro se Defendant Donald D. Lewis ("Lewis") respectfully submits this memorandum of law in support of his motion to disqualify Wigdor LLP ("Wigdor") from acting as counsel to Plaintiff ("Jane Doe" or "Plaintiff") in connection with this action (the "Motion").[1]

## PRELIMINARY STATEMENT

Wigdor must be disqualified as counsel for Plaintiff to preserve the fairness of these proceedings. Wigdor partner David E. Gottlieb is in possession of confidential information shared with him directly by Lewis in writing and orally.  Armed with this information, Wigdor has an irreconcilable conflict and cannot represent Jane Doe. Further, because Wigdor is a small law firm – with 7 partners and 7 additional attorneys[2] – no screen can mitigate the risk to Lewis's confidences, much less the appearance of impropriety.

Wigdor was advised verbally on at least two occasions, and once by letter with specific details, of their unavoidable conflict.  The verbatim and uncontested factual points are set forth in a letter from Lewis's counsel (in related litigation) to Wigdor:

- "On Friday, March 22, 2019, at 2:48 p.m., our client spoke with Mr. David Gottlieb, one of seven partners listed on the Wigdor website, about potential claims against his former law firm, which claims directly overlap with the threatened lawsuit."

- "On Friday, March 22, 2019, at 4:05 p.m., our client spoke again with Mr. David Gottlieb about potential claims against his former law firm."

- "On Friday, March 22, 2019, at 5:25 p.m., our client transmitted by e-mail a 'draft

---

[1] "Jane Doe" is used herein consistent with the direction of the Honorable Justice Andrea Masley, J.S.C. that Plaintiff be referred to as Jane Doe.  Justice Masley's directive was entered seven months after Lewis voluntarily used Jane Doe in his related litigations filed in mid-2019. For additional background, Lewis respectfully directs the Court to the Amended Verified Complaint he filed against Jane Doe in New York State Supreme Court on August 31, 2020; the original complaint was filed on January 27, 2020. (A copy of the Amended Verified Complaint is attached to the accompanying Dec. as Exhibit 1).  (The "Dec." refers to the accompanying Declaration of Defendant Lewis.)

The three Lewis actions filed by Lewis in New York State Court, County  of New York are titled:  (i) *Lewis v. Pierce, Bainbridge, et al.*, Index No: 652931/2019, (ii) *Lewis v. Pierce, Bainbridge, et al.*, Index No: 155686/2019, and (iii) *Lewis v Doe*, Index No: 650644/2020.

[2] A pdf of the "Wigdor Team" as represented on the firm's webpage, as of September 21, 2020, is attached as Exhibit 2 to the Dec.

complaint' which included redlines evidencing work-product marking up the proposed complaint against his former law firm, in which Jane Doe and the purported claims now raised by your firm were addressed. In response, Mr. Gottlieb indicated that he would review the draft complaint over the weekend. A word search indicates 'Jane Doe' or 'Doe' are referenced 125 times in that draft complaint."

- "Mr. Lewis also communicated with Mr. Gottlieb again by e-mail on Sunday, March 24, 2019."

- "According to the Wigdor website, in addition to the seven partners, your firm currently employs five associates, and one counsel, for a total of less than 15 attorneys."

(A copy of this "Conflict Letter" is attached to the Dec. as Exhibit 3.)

As noted, the redlined draft complaint only mentioned "Jane Doe" or "Doe" 125 times; in addition, the draft complaint to Wigdor partner Gottlieb:

- Was transmitted by e-mail with "Privileged & Confidential" in the subject line. (Dec. ¶ 15.)

- Contained an "Attorney Work Product, Privileged and Confidential" header on every page. (Id.)

The Conflict Letter included legal authority warranting disqualification. Wigdor ignored the letter, cavalierly filed the Complaint and proceeded to immediately blast the defamatory content out on Twitter. (Dec. ¶7)

As noted, David E. Gottlieb is the Wigdor partner with whom Lewis consulted. (Dec. ¶¶ 11, 12) Wigdor partner Lawrence M. Pearson executed the instant Complaint. Given their conduct in this matter, perhaps unsurprisingly, Gottlieb and Pearson are defendants in an amended complaint filed in federal court in Texas on November 26, 2019; the Texas complaint alleges Wigdor is a "racketeering enterprise," engaged in "acts or threats of extortion," and "employs criminal means to shake down targeted victims. . ." (Dec., Exhibit 4 at ¶¶ 10, 13)

Wigdor has violated the ethical Rules of Professional Conduct,[3] breached its fiduciary duty to Lewis, aligned itself with law firms (Pierce Bainbridge and Hecht Partners, with current and/or former partners likely to be subject of a criminal investigation, if they aren't already), and then attempted to extort an exorbitant monetary payment from the African American Lewis. This was after Wigdor was advised that the racist weaponization of #MeToo would never result in any monetary payment.

It is not difficult to figure that Jane Doe is not acting alone; and there is a strong suggestion that Wigdor's is engaged in coordinated misconduct buoyed by:

- Pierce Bainbridge Beck Price & Hecht LLP, including, but not limited to, its founder John M. Pierce, former name-partner David L. Hecht (who founded Hecht Partners LLP where Jane Doe now works, after working at Pierce Bainbridge) and Carolynn K. Beck, now a partner at Goldstein & McClintock LLLP, all of whom have a substantial financial and reputational interest in seeing Lewis railroaded in this Action.

- Potentially a Houston-based litigation funder named Virage Capital Management, who is reportedly owed an estimated $65 million after funding Pierce Bainbridge for approximately one-year.[4] Virage said in June 2020 that Pierce Bainbridge defaulted on the debt, yet has not sued the firm. (Id.)  Instead, Virage appears to have funded  spin-off firm Hecht Partners, is reportedly paying Pierce Bainbridge's legal bills in Lewis's two pending litigations against the firm (after prior counsel withdrew citing, among other reasons, concerns with ethics and payment), and Virage Capital may be providing the financial fuel for this latest smear campaign. (Dec. ¶ 53)

Although disqualification can be a harsh result, here it is not. Jane Doe will not be

---

[3] The two key provisions of the New York Code of Professional Responsibility implicated by this motion are DR 4-101(B) and DR 5-108(A). Disciplinary Rule 4-101 (B) provides, in relevant part, that "a lawyer shall not knowingly: (1) Reveal a confidence or secret of  a client; [or] (2) Use a confidence or secret of a client to the disadvantage of that client." Disciplinary Rule 5-108 analyzes the duties owed by an attorney to a former client. Specifically, Disciplinary Rule 5-108 provides that "[a] lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure…[t]hereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client . . . ." DR 5-108 (McKinney Supp. 1991).

[4] See Ryan Boysen, *Pierce Bainbridge Funder Says Firm Defaulted on Debt*, Law360, June 1, 2020, attached to the Dec. as Exhibit 5.

prejudiced based on "The Balance of Equity Factors" below.

- This action is in the earliest of stages; no activity has occurred other than the filing of the Complaint.

- Jane Doe is represented by another law firm in connection with Lewis's defamation claim filed against Jane Doe seven months before this action was filed.

- Jane Doe has worked at two law firms (Pierce Bainbridge and Hecht Partners) comprised of a slew of litigators, and certain of those litigators have coordinated with her to weaponize #MeToo for two years.

- These same law firms (Pierce Bainbridge and Hecht Partners), and their current and former employees, have collectively hired nearly ten law firms, on three different continents to harass, threaten and/or defame Lewis over the last two years.[5]

Finally, Wigdor is a small law firm that cannot rebut the presumption of shared confidences; accordingly, the Court should grant Lewis's motion to disqualify. Wigdor. *Hull v. Celanese Corp*., 513 F.2d 568, 571 (2d Cir. 1975) ("any doubt is to be resolved in favor of disqualification."), *Fierro v. Gallucci* 2007 U.S. Dist. Lexis 89296, at *10-12 (EDNY 2007) (consultations with a firm two years earlier was a sufficient basis for disqualification even where the firm was not retained and the firm claimed not to recall any of the communications.)[6]

---

[5] The law firms include: (1) Putney Twombly Hall & Hirson LLP, (2) Littler Mendelson P.C., (3) Mukasey Frenchman & Sklaroff LLP, (4) Cohen Seglias Pallas Greenhall & Furman PC, (5) Meister Seelig & Fine LLP, (6) Chapman Tripp (New Zealand), (7) Tweed (Ireland & Dublin), and (8) Wigdor LLP; in addition to a dismissed lawsuit filed *pro se* by Pierce Bainbridge Beck Price & Hecht filed against Lewis in Los Angeles. (Dec. ¶ 36)

[6] Lewis is focused on disqualification for purposes of this Motion; however, because the Court may use its inherent powers to grant additional relief, Lewis has included additional helpful background information in his instant initial filing in this Action. Lewis has also included certain of the information given the exceedingly heinous smear campaign involving the parties addressed in the Motion. Lewis reserves all rights to seek redress with this Court or in any other fora concerning the same.

Lewis is prepared to share supporting materials of any the circumstances set forth in this Motion should the Court so desire.

# FACTUAL BACKGROUND

### I.   WIGDOR, GOTTLIEB & PEARSON HAVE BEEN ACCUSED OF RACKETEERING AND EXTORTION BY ANOTHER PARTY

This is not the first time Wigdor has been accused of engaging in unethical conduct.  As noted, Wigdor partners Gottlieb and Pearson, are defendants in an amended complaint filed less than a year ago in the Eastern District of Texas.  Allegations in that complaint are concerning:

- "Defendants…David E. Gottlieb and Lawrence M. Pearson are partners in Wigdor, LLP…a racketeering enterprise…[with] a pattern of racketeering activity, involving acts or threats of extortion…"  (Emphasis added.) (Dec. Exhibit 4 at ¶10.)

- Although Wigdor LLP masquerades as a law firm, it employs criminal means to shake down targeted victims. . . (Emphasis added.) (Id. at ¶13.)

Wigdor's misconduct here generally comports with these allegations.

### II.   WIGDOR AMPLIFIES THE EXPOSURE OF JANE DOE & THIS ACTION; PIERCE BAINBRIDGE AND HECHT PARTNERS FOLLOW SUIT

While Wigdor claimed it joined the fray to extricate Jane Doe from what Wigdor called a "public food fight" between Lewis and Jane Doe's former employer Pierce Bainbridge (Dec. ¶ 20), Wigdor did precisely the opposite.  Rather than extricate Jane Doe from whatever misconceived notions Wigdor claims to have concerning her exposure, it was Wigdor who catapulted Jane Doe and this dispute into the spotlight.

Wigdor attempted to extort an exorbitant monetary payment from Lewis (Dec. ¶ 27), filed the instant defamatory complaint, disclosed Jane Doe's name to the world, and then proceeded to amplify issues by immediately posting a series of Tweets disclosing Jane Doe's name, as well as Wigdor's and Jane Doe's defamatory smears. (Dec. ¶ 30.)  A cavalcade of media attention

followed.[7]

Pierce Bainbridge founder John Pierce has actively pushed on Twitter for further publication of the Complaint.  Pierce's behavior supports Lewis's position that Pierce Bainbridge is a sham defendant in this Action. It also supports the notion that Jane Doe and Wigdor have coordinated with Pierce Bainbridge, as well as Hecht Partners to smear Lewis.



Indeed, on September 1, 2020, a law firm that represents Hecht Partners tried to coerce a media outlet into covering Jane Doe's Complaint in connection with threatening a baseless lawsuit. (Dec. ¶32.)

In yet a third instance, a lawyer affiliated with David Hecht, Mitchell Schuster of Meister Selig & Fein, whom Lewis has never met, nor spoken with, baselessly attacked  Lewis in overage of the Complaint in the *New York Law Journal* on issues Schuster cannot possibly know anything about.  (Dec. ¶ 34, 35.)

As a contrast, when Lewis sued Jane Doe in January, his complaint did not receive any media coverage; Lewis has however been publicly and consistently critical of both law firms.

---

[7] Coverage of the heinous defamatory Complaint appeared in *Law360*, *New York Law Journal*, *ABA Journal,* and several other sources which have never previously covered Pierce Bainbridge issues.

In light of these events, Wigdor, Jane Doe, John M. Pierce, David L. Hecht and Carolynn K. Beck (who has been remarkably unethical and dishonest about related issues for two years),[8] among others, are to blame for the disclosures about Jane Doe in this Motion.

## III.   WIGDOR APPEARS TO HAVE COORDINATED  WITH PIERCE BAINBRIDGE AND HECHT PARTNERS

As an initial matter, Lewis never had any authority over Jane Doe's work status. Documents and sworn testimony will evidence this, testimony from those who do not have a financial and reputational interest in being dishonest.  Wigdor could have deduced the same with even the slightest modicum of diligence.  (Dec. ¶ 42)

Instead, Wigdor apparently coordinated with Pierce Bainbridge and certain of its former partners, to smear Lewis;[9] a law firm immersed in corruption and potential criminal misconduct.[10]

As noted, Lewis has two pending litigations against his former firm and a multitude of his former partners; both actions hinge heavily on Jane Doe's falsehoods, and Pierce Bainbridge's weaponization of the same; which results in the substantial financial and reputational stake

---

[8]  Beck, the former Pierce Bainbridge General Counsel, has been accused of spearheading a fraud on the court in the Lewis litigations, in addition to suborning perjury.  The accusations rely heavily on the sworn affidavit of a former Pierce Bainbridge associate. (Dec. ¶48.) Lewis also submitted a sworn affidavit. (Id.) While Pierce Bainbridge responded to that motion, Beck did not submit an affidavit refuting the accusations; the motion is pending. (Id.)

[9] The information in this Motion is just a sample of the indicia of coordination and lack of ethics at Pierce Bainbridge and Hecht Partners – both which have employed Jane Doe. It has been presented to provide the Court with a general sense of the environment at the law firms with which Wigdor appears to have coordinated in breaching Lewis's confidences. Lewis is prepared to share additional indicia should the Court so desire.

[10]  The following heavily sourced materials are provided to support the assertion that Pierce Bainbridge, with whom it appears Wigdor coordinated, is an immensely corrupt law firm where potentially criminal conduct has occurred. On September 17, 2020, a criminal lawyer in Arizona, who Lewis has never met, published a video (Robert Gruler, https://www.youtube.com/watch?v=1R2FljDQHdw, September 17, 2020) about Pierce Bainbridge related entities. The video is titled: *Is Kyle Rittenhouse's Attorney [John M. Pierce] Involved in a Ponzi Scheme?* and analyzes a Medium article penned by Lewis. Don Lewis, *Musical Law Firms? A Curious Debt-Tune Played by the Lawyer for Kyle Rittenhouse*, Medium.com, September 7, 2020. (Dec., Exhibit 6) Another Medium article penned by Lewis was recently included in a front-page article in the *Milwaukee Journal Sentinel*.  Don Lewis, *Did the Temperament of the Lawyer for Kyle Rittenhouse Taint Operations at Pierce Bainbridge?*, Medium.com, September 9, 2020. (Dec., Exhibit 7)

referenced above.[11]

Doe's current boss David Hecht, Hecht Partners founder,[12] maintains close ties with Pierce Bainbridge (where he was a name-partner). Well after Hecht purportedly "resigned"[13] – with Pierce Bainbridge facing a reported $70 million debt and several lawsuits – Hecht said during a hearing -- in *Earl v. Boeing*, Civ Action 4:19-cv-00507, United States District Court, Eastern District of Texas, Sherman Division -- that he is still "affiliated" with the firm "in connection with certain cases," and Hecht still had "access to all of Pierce Bainbridge systems." (See Dec., Exhibit 4 at p. 16, lines 9-12)

Fewer than two weeks after Hecht's statements about "affiliation" with "and access to all systems" for Pierce Bainbridge, an outside lawyer for Hecht Partners said the opposite. The lawyer for Hecht partners threatened baseless litigation and claimed that Pierce Bainbridge and Hecht Partners are "entirely separate firms." (Dec. ¶ 45.)

This "entirely separate firms" representation by counsel for Hecht Partners is also belied by the fact that, notwithstanding Hecht's claim to have resigned Pierce Bainbridge in March (see Dec., Exhibit 9) (i) Hecht executed signature blocks on behalf of both Hecht Partners and Pierce Bainbridge in May, June and July 2020 (Dec. ¶45), (ii) Hecht's LinkedIn represented he was still "Counsel" for Pierce Bainbridge as of July 9, 2020 (Id.) and (iii) Hecht Partners claimed to be a "successor" firm for Pierce Bainbridge in the Texas action, even though Pierce Bainbridge had not

---

[11] The court may take judicial notice of these lawsuits, the titles of which are set forth above. *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 96 n.17 (S.D.N.Y. 2004) ("The Court can take judicial notice of matters of public record. . . including filings in related lawsuits. . . .").

[12] Hecht Partners was formed in March 2020 by ex-Pierce Bainbridge name-partner David L. Hecht with Pierce Bainbridge facing tens of millions in debt and several legal actions. See Ryan Boysen, *Pierce Bainbridge Funder Says Firm Defaulted on Debt*, LAW360, June 1, 2020. (Dec. Exhibit 5.) All six partners at Hecht Partners were partners at Pierce Bainbridge. Two of them were name-partners and four of the partners at Hecht Partners are defendants in lawsuits Lewis filed in mid-2019. (Id. at ¶ 44)

[13] See Ryan Boysen, *Pierce Bainbridge Acting Head, 3 Name Partners ResignLAW360*, April 9, 2020. (Dec. Exhibit 9.

dissolved.  Linda Chiem, *Pierce Bainbridge Breakup Sparks Rift in Boeing Class Suit*, LAW360, June 11, 2020. (Dec., Exhibit 10).

Furthermore, in the same Boeing action, Hecht was accused by an ex-Pierce Bainbridge associate of lying to a federal court; Pierce Bainbridge's outside counsel, Ed Altabet of Cohen Seglias, was accused of engaging in related "intimidation" to keep the ex-associate from coming forward to correct the record. (Id.) Altabet is also counsel for Pierce Bainbridge in the Lewis state court litigations, as well as for Pierce Bainbridge in this case.[14]

The offshoot is that this is not the first time that Jane Doe's current employer (Hecht Partners LLP) has coordinated with Jane Doe's former employer (Pierce Bainbridge Beck Price & Hecht LLP) to engage in unethical and coercive misconduct. Wigdor appears to have coordinated with the two law firms here.

Jane Doe allegedly joined Hecht Partners just weeks before this Action was filed.  (This timing alone raises red flags about the filing of this Complaint, as well as the related media surge concerning the Complaint spearheaded by Wigdor, Pierce Bainbridge founder John Pierce and outside counsel for Hecht Partners.[15]

---

[14] Altabet replaced Marc Mukasey as counsel for Pierce Bainbridge in the Lewis lawsuits against Pierce Bainbridge and a multitude of its partners, after Mukasey filed to withdraw on March 12, 2020 citing ethical and payment concerns with continued representation.  (Dec. ¶50.)

[15] In addition to being accused of lying to a federal court, in April 2019, a motion was filed with United States District Court for the Southern District of New York, Judge Alvin K. Hellerstein, which accused Hecht of violating the ethical Rule of Professional Conduct 8.4 on attorney "dishonesty and misrepresentation." Hellerstein found that Hecht acted "inconsistent" with Rule 8.4.  (Dec., Exhibit 11 at p 10.)  Hecht proceeded to boast about the decision on LinkedIn, and compared his firm to "grandmasters in chess," indicative of his apparent lack of respect for the judicial process and ethical Rules of Professional Conduct. (Dec., Exhibit 12.) Notwithstanding Hecht's grandstanding, the case was thrown out months later in Hecht's adversary's favor.

## IV.   PRE-FILING COMMUNICATIONS

### A.   Wigdor Threat Letter to Lewis

On June 12, 2020, Wigdor emailed Lewis a defamatory threat letter signed by Pearson which states, in part: "Putting a stop to this conduct by Mr. Lewis is as strong a motivator for our representation of [Jane Doe] as anything else." The purported "conduct" was Lewis allegedly "dragging [Jane Doe] into his food fight with Pierce Bainbridge in open court."   Wigdor's subsequent behavior belies their so-called "as strong a motivator . . . as anything else" representation.  (Dec. ¶__)

### B.   Lewis Responds to the Wigdor Threat Letter and Highlights the Conflict

On June 17, 2020, Lewis's counsel (in related matters) emailed a letter to Pearson which states, in part, in part that Wigdor had an  "irreconcilable conflict . . . based on your partner Mr. David Gottlieb having had privileged verbal and written communications with our client, including a review of a redlined version of the draft of his complaint (transmitted by e-mail dated March 22, 2019, with the subject line "Privileged & Confidential," and with "Attorney Work Product, Privileged & Confidential" on every page), as well as a related discovery letter about Pierce Bainbridge's penchant for deleting and destroying documents, including, but not limited to, those related to Ms. Jane Doe." (Dec. ¶ 22.)

Lewis's letter concluded: "there will be no monetary payment from Mr. Lewis to anyone involved in this weaponization of #MeToo and the exploitation of an abusive, disgusting, and ill-advised racial stereotype to defame and demonize an African-American attorney who has been an upstanding member of the bar for 20 years."  (Id.)[16]

---

[16] Wigdor's did not even consult with, or inform, Jane Doe's defense counsel prior to sending of the June 12 defamatory missive.  Jane Doe's defense counsel learned about the Wigdor threat from Lewis's counsel.

C.   Wigdor Responds and Claims it Has No Conflict

On June 24, 2020, Wigdor responded, cited no legal authority and stated:  "[W]e do not see any conflict that would preclude our representation. No one working on this matter has received or reviewed any confidential information from Mr. Lewis, and David Gottlieb is in no way involved in our representation of Ms. Kyle." (Id. ¶ 24).

D.   Conversation with Wigdor

On July 14, 2020, there was a telephone call with Lewis's counsel in related actions, Wigdor, and Jane Doe's defense counsel. Wigdor attempted to extort an exorbitant monetary settlement.  This was dismissed out of hand. (Id. ¶ 27)

E.   Conflict Letter to Wigdor

On July 27, 2020, Lewis's counsel  in related actions sent Gottlieb and Pearson a letter which contained the facts set forth in the Preliminary Statement, as well as legal authority supporting disqualification. (Id. ¶ 28) Wigdor ignored the letter and filed the complaint.  (Id. ¶ 29

**V.      CONFIDENCES SHARED WITH GOTTLIEB**

In addition, to the draft redlined complaint, which references "Jane Doe" or "Doe" approximately 125 times, Lewis shared many confidences with Gottlieb; they discussed strategy around the same, which will not be disclosed.  By way of small example, to the best of Lewis's recollection, certain of the topics included:

- Jane Doe's checkered past, which included a transitional homeless shelter in Harlem, New York and a Covenant House in Newark, New Jersey.

- Jane Doe potentially having made false accusations of sexual misconduct against family members in her past.

- Jane Doe's odd-online history, and related inferences, including a Couchsurfing.com page which seeks sleeping quarters for the night and made representations Doe Jane "loves" "spreading joy" and wearing "deep pink lipstick."

- A Facebook posting in Jane Doe's name that suggests she was paid off to lie about

the whistleblowing Lewis, which contained Jane Doe's middle initial.

- Jane Doe's deletion of several social media pages, notwithstanding preservations obligations, just days after Lewis noted their credibility undermining nature.

- Jane Doe's odd relationship with David L. Hecht, including Jane Doe welling up in tears when others talked poorly of Hecht.

    (Hecht is an ex-Pierce Bainbridge name partner, earlier this year Hecht founded spin-off firm Hecht Partners LLP, which maintains close ties to Pierce Bainbridge, and where all six of the partners are ex-Pierce Bainbridge Partners. Jane Doe came to Pierce Bainbridge as Hecht's "personal assistant" around the time or shortly after she was affiliated with the Covenant House and Couchsurfing.com. Jane Doe now works at Hecht Partners)

- Lewis actively seeking a senior person to work over Jane Doe, and her access to emails concerning that search the day before Jane Doe's false allegations were made.

- Jane Doe having expressed concern about firm finances.

- Lewis's opinion that Pierce, Beck and others are likely to be the subject of a criminal investigation.

- Jane Doe's falsehoods about an alleged incident in the office in July 2018 that never happened, and major holes in a Yankee ticket delivery story from two weeks later, which cratered her already low credibility.

- Two attorneys at the firm calling Jane Doe a liar less than 24 hours before the false allegations were made. One was in writing. (The text below is from ex-Pierce Bainbridge partner Christopher N. LaVigne (now with Withers Bergman LLP / Withersworldwide); it is from October 4, 2018, the same day Jane Doe allegedly made the false allegations.)



## VI.     A FORMER PIERCE BAINBRIDGE ATTORNEY CALLS JANE DOE'S LIES INTO QUESTION

A long-tenured Pierce Bainbridge attorney's illuminating recent <u>written</u> messages comport

with certain of those discussion topics.

- "I think there's a reasonable chance that there will be a criminal investigation against John [Pierce].  But who also knew, was complicit, and covered up these things:  I think . . . David Hecht, Carolynn Beck."

- "[W]hen the firm was experiencing one crisis after another, I found Hecht to be pretty despicable as a person."

- "[Y]ou really need to consider just how credible the accuser was to begin with, and this whole weird secret life before she assumed her identity, together with a closeness to Hecht—who has no ethical backbone, and Hecht's willingness to do anything John wanted because he pitifully believed this [Pierce Bainbridge] would become something, and all of a sudden this whole case is [messed up] and someone [Lewis] might have been really wronged here.  Truly irreparably wronged."

- "[I]was also hard to believe (and concededly more convenient) that she would completely make this up and even if you could believe that, that [David] Hecht and John [Pierce] designed this whole plan to screw you over. But the more the evidence has come in the more I smell something rotten in Denmark."

(See Dec. ¶ 49, covering the four bullets above.)

## VII.  WIGDOR MANIPULATES & DISTORTS CONFIDENCES SHARED BY LEWIS

A.   <u>Suggestion that Jane Doe Was Paid Off to Lie About Lewis</u>

A Facebook page in Jane Doe's name contained a comment "I'm cashing in tonight" just

three days after Lewis was banished from Pierce Bainbridge.  Wigdor has offered an excuse that

was never heard over the prior almost two years -- a quintessential example of trying to back into

a story. Specifically, the June 24, 2020 Wigdor letter claimed:

"As you may be aware, Selina Kyle is also the 'real' name or alter ego of the popular DC Comics superhero Catwoman. There are dozens, if not hundreds or thousands, of social media accounts that share our client's name."

Wigdor's revisionist history fails.  As Lewis communicated to Gottlieb, Jane Doe used a

middle name and middle initial.  Furthermore, the notion that at least three social media pages in Jane Doe's name were deleted days after Lewis said they undermined her credibility, and that one of those three is somehow not related to the Jane Doe in this Action, is not credible.

Below is a media page  Jane Doe apparently neglected to delete, as well as the "cashing in" tonight post; the names used for both postings underlined.

*Social Media Page captured September 22, 2020*[17]



*Facebook Page Capture November 7, 2018, Lewis was illegally expelled 5 days later, the page was deleted less than a week later)*



---

[17] The image in the top left of the first image pops up when the page is accessed.  More risqué images pop-up as well.

14

B.   <u>Wigdor Conveniently Drops the Lie That Lewis  Somehow Put Jane Doe at Risk</u>

Wigdor's Complaint dropped one of the litany of heinous falsehoods deployed against Lewis:  specifically, on May 16, 2019 Pierce Bainbridge alleged that Lewis "revealing [Jane Doe's] former name [in an e-mail to his partners on November 12, 2018] exposed [Jane Doe] to a significant risk of physical and psychological harm;" a falsehood repeated elsewhere. This is just one of many examples of Wigdor trying to back into a story, by revising the same, in order to smear a Wigdor partner's former client.

*First*, the Pierce Bainbridge bookkeeper, Paige Storman, revealed both names with no mention of confidentiality or privacy; it was characterized as "Trivia." A screenshot from a September 7, 2018 text.



*Second*, a public Twitter page existed where both names were readily identifiable.  This page was also deleted.



15

*Third*, a Couchsurfing.com profile plainly disclosed both names.   As with the Twitter page, as well as the Facebook "cashing in tonight" page, this Couchsurfing.com page was deleted, in breach of preservation obligations.





C.    Wigdor's Misconduct May Be Financially Incentivized

Virage Capital Management, a Houston-based litigation funder, is potentially funding the Wigdor smear campaign.  (Dec. ¶ 53.) Illustratively, despite the reported $65 million Pierce debt, on which Virage Capital says the firm defaulted:[18]

- Virage has not sued Pierce Bainbridge or any of the firm's partners. (Dec. ¶ 54.)

- Virage appears to have funded Hecht Partners, where Jane Doe became employed just weeks before the filing of this action. (Id.)

- Virage is reportedly paying for the legal bills of Cohen Seglias and Ed Altabet related to Lewis's ongoing lawsuits against the firm and a multitude of its former partners.  (Id. ¶53.)  Furthermore, Altabet reportedly has stated he believed he could convince Virage to pay for additional lawyers. (Id.)

- Jane Doe, a paralegal, who prior to commencing employment at Pierce Bainbridge was affiliated with a homeless shelter, a Covenant House, and seeking sleeping quarters for the night, has now retained a law firm to defend against Lewis's claims, and separately retained Wigdor, to file a lawsuit with zero chance of monetary recovery. (Id. ¶ 39)

## ARGUMENT

The decision to disqualify an attorney "is committed to the sound discretion of the district court," with the goal being "to forestall violation of ethical principles."  *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72-73 (2d Cir. 1990)). One such ethical principle is the prohibition on an attorney "us[ing] a client's privileged information against that client." *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005). An attorney's duty of loyalty to past clients exists to encourage clients to trust and be candid with their counsel. *In re I Successor Corp.*, 321 B.R. 640, 650 (Bankr. S.D.N.Y. 2005) ("A client's reliance on the attorney's future loyalty is just as essential to foster a relationship of trust and confidence as is the attorney-

---

[18] Dec., Exhibit 5.

client privilege."). If an attorney "is permitted to proceed with a case knowing the protected confidences of the opposing client . . . [it] may undermine the fairness of the proceeding." *Miroglio, s.p.a. v. Morgan Fabrics Corp.*, 340 F. Supp. 2d 510, 512 (S.D.N.Y. 2004).

Further, the conflict is not just Gottlieb's, but Wigdor's, as the ethical rules recognize the everyday reality that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information. *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005).

## I.  DISQUALFICATION IS WARRANTED

### A.  Lewis Was a Client

The first disqualification factor is whether the moving party is a former client of the adverse party's counsel.  *TufAmerica, Inc. v. Codigo Music LLC*  2013 U.S. Dist. Lexis 65777, at *11-12 (S.D.N.Y 2013). Courts have acknowledged that an attorney-client relationship exists "if the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice." *Fierro v. Gallucci* 2007 U.S. Dist. Lexis 89296, at *17 (E.D.N.Y. 2007) (collecting cases.)

Moreover, an attorney client relationship can be established even if the attorney ultimately is not retained. *Fierro*, 2007 U.S. Dist. Lexis 89296, at *19 (E.D.N.Y. 2007)  (disqualifying counsel and noting a "preliminary conversation is sufficient to establish the existence of an attorney-client relationship, even though the [disqualified firm] was not ultimately retained.")

The Seventh Circuit has written, "The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result." *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir.), cert. denied, 439 U.S. 955, 99 S. Ct. 353, 58 L. Ed. 2d 346

(1978); accord *Seeley v. Seeley*, 129 A.D.2d 625, 627, 514 N.Y.S.2d 110, 112 (1987); *see also Rose Ocko Found., Inc. v. Liebovitz* 155 A.D.2d 426, 427, 547 N.Y.S.2d 89, 90 (2nd Dept. 1989) (disqualification granted noting, "[i]t is also well established that the fiduciary relationship existing between lawyer and client extends to a preliminary consultation by a prospective client with a view toward retention of the lawyer, even where actual employment does not arise"); *SMJY v. Conrail* 1982 U.S. Dist. LEXIS 15458, at *2-3 (S.D.N.Y. 1982) (disqualification granted, court accepted the magistrate's fact findings for disqualification based on a consultation); *Fierro,* 2007 U.S. Dist. Lexis 89296, at *16. (E.D.N.Y. 2007) (rejecting argument that disqualification was inappropriate because the relationship consisted only of "preliminary conversations [that]were brief, the [the disqualified firm] never opened a file…[and] never charged any legal fees for the initial consultation"; disqualification granted) (collecting cases).

In this action, Lewis sought counsel from Gottlieb.  Lewis provided privileged and confidential information and marked it as such.  Lewis expected his confidences would not be shared.

B.  The "Substantial Relationship" Test is Met

Second, there is a substantial relationship between the subject matter of Lewis's consultations with Gottlieb and the issues in this case. This District has articulated the "substantial relationship" test as follows: "if the facts giving rise to an issue which is material in both the former and the present litigations are as a practical matter the same, then there is a 'substantial relationship' between the representations for purposes of a disqualification motion." *United States Football League v. National Football League*, 605 F.Supp. 1448, 1459 (S.D.N.Y. 1985). "It is the congruence of factual matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes." *Id*. at 1460 n.26. As stated by another

court: "The substantial relationship test does not depend on the amount of work performed or the duration of the representation, but on the similarity of the issues in the former and current representations." *Fierro*, 2007 U.S. Dist. LEXIS 89296, at *19 (E.D.N.Y. 2007) citing *Arifi v. De Transport Du Cocher, Inc.*, 290 F. Supp. 2d 344, 349 (E.D.N.Y. 2003).

The issues in this case directly overlap with the matters on which Gottlieb was consulted. This is not a remotely close call. The bulleted discussions points between Gottlieb and Lewis (set forth above and in Dec. ¶ 17), and the <u>mention of "Jane Doe" 125 times in the "Privileged and Confidential" draft complaint</u> remove any doubt. The subject matters do not just overlap, they are virtually identical. Accordingly, this second requirement is met as well.

C.   <u>Lewis Shared Confidences</u>

Third, Gottlieb learned confidential information in the course of his prior representation of Lewis.[19] Indeed, where, as here, the two representations are substantially related, the Court is to "assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation." *Chinese Auto. Distribs. v. Bricklin,* 2009 WL 47337 at *2-3 (*quoting T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265, 268-69 (S.D.N.Y. 1953)) (emphasis added). "[T]o require such proof [that confidential information was disclosed to the former attorney] would 'put the former client to the Hobson's choice of either having to disclose his privileged information…or having to refrain from the disqualification motion altogether." *Mitchell v. Met. Life Ins. Co., Inc*., 2002 WL 441194 at *5 (S.D.N.Y. 2002). Thus, the Court "'need not, indeed cannot, inquire whether the lawyer did, in fact, receive confidential information during his previous employment, [but] where it can

---

[19] New York Rule of Professional Conduct 1.6 defines "confidential information" as "information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential."

reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject matter of his subsequent representation, it is the court's duty to order the attorney disqualified.'" *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.* 722 F.Supp.2d at 306-07 (quoting *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 563, 571 (2d Cir. 1973)) (emphasis added); *United States Football League v. National Football League*, 605 F.Supp. 1448, 1461 (S.D.N.Y. 1985)). ("The presumption is a substitute for proof: it 'arises in order to forestall a direct inquiry into whether confidential information was in fact transmitted by the client.'")

## II.   WIGDOR CANNOT AVOID IMPUTATION

The presumption of shared confidences at a law firm "is much stronger within a small firm than a large firm." *Filippi*, 722 F. Supp. 2d at 308. Small firms present "a continuing danger that [the conflicted attorney] may unintentionally transmit information he gained through his prior [representation] during his day-to-day contact with [counsel adverse to his former client]." *Id*. Moreover, the "appearance of impropriety" that exists in such situations marshals in favor of disqualification. *Id.* For this reason, many courts in this District have held that "screening procedures," the traditional means of preventing shared confidences, "are inadequate at small firms." *Id*. (collecting cases); *see also Mitchell v. Metropolitan Life Ins. Co.*, 2002 WL 441194, at *9 (S.D.N.Y. 2002) ("Courts have only approved screening procedures in the limited circumstances where a conflicted attorney . . . has no contact with the department conducting the current litigation, which typically occurs only in the context of a large firm.")

Due to the small size of Wigdor, any ethical wall from Gottlieb would be insufficient to rebut the presumption of imputation.  Wigdor has fewer than 15 attorneys.  See *Crudele v. N.Y.C. Police Dep't*, 2001 WL 1033539, at *4 (S.D.N.Y. Sept. 7, 2001) (disqualifying 15-attorney firm); *Decora Inc. v. DW Wallcovering, Inc.*, 899 F. Supp. 132, 141 (S.D.N.Y. 1995) (disqualifying 44-

attorney firm);   *Yaretsky v. Blum*, 525 F. Supp. 24, 29-30 (S.D.N.Y. 1981) (disqualifying approximately 30-attorney firm).

Wigdor has only 14 attorneys; the cases too warrant disqualification.

## III.   WIGDOR HAS NO DEFENSES

Wigdor may argue all or a combination of the following in response to this Motion.

- Gottlieb never represented Lewis.
- Lewis never shared any confidential information with Gottlieb.
- Gottlieb never shared any information with Wigdor attorneys working on this matter.

All of these arguments would fail.

The law and facts (set forth above) support that (i) Gottlieb represented Lewis, and (ii) Lewis did share confidential information with Gottlieb; Wigdor has not denied either point. Instead, Wigdor stated by letter: "No one working on this matter has received or reviewed any confidential information from Mr. Lewis, and David Gottlieb is in no way involved in our representation of Ms. Kyle."

Even assuming Wigdor denies internal sharing of Lewis's confidential information, it is not a reason to avoid disqualification.  As multiple cases have recognized, the "sworn word of an infected attorney or his or her allegedly uninfected colleague that there was no cross-pollination between them is not a satisfactory rebuttal" to the presumption of shared confidences. *Papanicolaou v. Chase Manhattan Bank, N.A., 720 F. Supp. 1080, 1086* (S.D.N.Y. 1989); *see also Chinese Automobile*, 2009 WL 47337 at *4 n.1 (rejecting declarations from the challenged law firm stating that the individual conflicted lawyer had not discussed his prior representation with other lawyers at the firm); *Huntington v. Great Western Resources, Inc.*, 655 F.Supp. 565, 576 (S.D.N.Y. 1987) ("naked denial is insufficient to rebut the presumption that [the attorney] shared

in such information."). Furthermore, Wigdor cannot avoid imputation based on the imputation authority set forth in "Argument" Section II above.

Furthermore, insofar as Gottlieb engages in additional Wigdor revisionist history, and claims he does not recall receiving any confidential information from Lewis, this position also fails. *Fierro,* 2007 U.S. Dist. LEXIS 89296, at *5-6 (disqualifying law firm that was never retained based on telephones consultation two-years earlier  where law firm argue it had "absolutely no recollection of ever having been contacted by [moving party].")

## IV.  THE BALANCE OF EQUITIES FAVORS DISQUALIFICATION

Finally, the balance of equities favors disqualification; Jane Doe will not be prejudiced for the reasons set forth in the "Balance of Equity Factors" set forth in the Preliminary Statement.

## <u>CONCLUSION</u>

Wigdor has violated my confidences.  Wigdor has violated its duties to me, and Gottlieb, Pearson and the Wigdor firm, apparently in coordination with Pierce Bainbridge and Hecht Partners, have behaved in an "extortionate" and "shakedown" like manner in violation of the Rules of Professional Conduct.  In light of the foregoing, the Court should disqualify Wigdor from representing Jane Doe in this Action and grant to Lewis such other and further relief as the Court deems just and proper.

By:   /s/ Donald D. Lewis

*Pro Se*
*87 Kings Point Road*
*Great Neck, NY 11024*
*516-441-2595*
*Donlewisdl87@gmail.com*
*Defendant*