UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------  x
                                                              :    20-CV-6142 (KPF)
SELINA KYLE,                                                  :
                                                              :
                                Plaintiff,                    :
                                                              :
                    v.                                        :
                                                              :
DONALD D. LEWIS, in his individual and                        :
professional capacities, and PIERCE BAINBRIDGE               :
BECK PRICE & HECHT LLP,                                       :
                                                              :
                                Defendants.                   :
                                                              :
                                                              :
------------------------------------------------------------  x
```

---

**LEGAL MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS
THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)
FILED ON BEHALF OF DEFENDANT DONALD LEWIS**

---

FERNANDEZ GARCIA, LLC
14 Elm Street
Morristown, NJ  07960
Telephone:      (973) 500-2256
Facsimile:      (973) 298-5737
juan@fernandezgarcialaw.com
Attorneys for Defendant Donald Lewis

<u>TABLE OF CONTENTS</u>

PAGE

Preliminary Statement   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of Facts   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Legal Argument   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . .  7

The Legal Standard  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Point I</u>

THE NYHRL CLAIMS SHOULD BE DISMISSED BECAUSE
PLAINTIFF FAILED TO ESTABLISH LEWIS WAS HER EMPLOYER . . . . . . . . . . . . . . . . .8

<u>Point II</u>

THE NYHRL CLAIMS SHOULD BE DISMISSED BECAUSE LEWIS ENGAGED IN
ABSOLUTELY PROTECTED POST-EMPLOYMENT ACTIONS . . . . . . . . . . . . . . . . . . .  10

<u>Point III</u>

THE NYSHRL GENDER DISCRIMINATION CLAIMS ARE TIME-BARRED . . . . . . . . . .  12

<u>Point IV</u>

THE RETALIATION CLAIMS SHOULD BE DISMISSED BECAUSE
THEY ARE FACTUALLY ERRONEOUS, INTERNALLY INCONSISTENT
AND FAIL TO STATE A PRIMA FACIE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

A.  Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

B.  The Complaint Pleads Positive – Not Adverse – Employment Actions . . . . . . . . . .13

C.  The Causal Connection Is Missing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

D.  Even The "Reasonable Deterrence" Requirement Is Missing . . . . . . . . . . . . . . . .  15

E.  The Lewis-Doe Defamation Lawsuit Is Not Actionable . . . . . . . . . . . . . . . . . . . .  16

F.  The Discriminatory Animus Is Missing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

G.  The New Retaliation Claims Are Not Fact-Based But Illusory . . . . . . . . . . . . . . . .17

PAGE

Point V

THE COMPLAINT DOES NOT SATISFY THE ELEMENTS OF "UNLAWFUL
DISCRIMINATORY PRACTICE" AS DEFINED BY THE NYSHRL
AND THEREFORE SHOULD BE DISMISSED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Point VI

THE DEFAMATION CLAIM SHOULD BE DISMISSED BECAUSE IT IS BASED UPON
STATEMENTS PROTECTED BY THE ABSOLUTE LITIGATION PRIVILEGE AND THE
PROTECTION OF N.Y. CIVIL RIGHTS LAW § 74 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A.      The Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B.      Summary of Plaintiff's Defamation Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C.      The Defamation Claims Arising Out Of The 2019 Lewis Lawsuits Are Time-Barred . . 21

D.      The Lewis Lawsuits Are Absolutely Protected By The Litigation Privilege . . . . . . . . . 21

E.      The Statements Made By Lewis's Counsel During Settlement Discussions Are Also
        Protected By The Absolute Litigation Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

F.      The Statements Made By Lewis To The Press Are Protected By The "Fair and True"
        Report Privilege of Section 74  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

        The May 15, 2019 *New York Law Journal* Article . . . . . . . . . . . . . . . . . . . . . . . . .  25

        The September 9, 2019 *New York Law Journal* Article . . . . . . . . . . . . . . . . . . . . .  25

        The February 2, 2020 NBC News Article . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

        The June 9, 2020 *Law360* Article . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

        The *LawFuel* Article. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                    <u>Page(s)</u>

*ABKCO Music, Inc. v. William Sagan, Norton LLC*, 2016 U.S. Dist. LEXIS
60778, 2016 WL 2642224, at *3 (S.D.N.Y. May 6, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24

*Aequitron Med., Inc. v. Dyro*, 999 F. Supp. 294 (E.D.N.Y. 1998) . . . . . . . . .. . . . . . . . . . . . . .  21

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . .  7, 8

*Biro v. Conde Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Bliss v. MXK Rest. Corp.*, 220 *F. Supp. 3d* 419 (S.D.N.Y. 2016)  . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Carmellino v. Dist. 20 of N.Y. City Dep't of Educ.*, No. 03 Civ. 5942 (PKC),
2006 U.S. Dist. LEXIS 63705, 2006 WL 2583019 (S.D.N.Y. Sept. 6, 2006). . . . . . . . . . . . . . . . .15

*Chutko v. Ben-Ami*, 150 A.D.3d 582, 55 N.Y.S.3d 203 (1st Dept 2017). . . . . . . . . . . . . . . . . . . . 23

*Dixon v. Int'l Fed. of Accountants*, 416 Fed. Appx. 107 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . 15

*Fairbrother v. Morrison*, 412 F.3d 39 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fine v. ESPN, Inc.,* No. 5:12-CV-0836 (LEK/DEP), 2013 U.S. Dist. LEXIS 17729
(N.D.N.Y. Feb. 11, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Fishof v. Abady,* 280 A.D.2d 417, 720 N.Y.S.2d 505 (N.Y. App. Div. 2001) . . . . . . . . . . . . . . . . 24

*Garrett v. Garden City Hotel, Inc*., No. 05-CV-962, 2007 U.S. Dist. LEXIS 31106,
at *69-70 (E.D.N.Y. Apr. 19, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Grasso v. Mathew*, 164 A.D.2d 476, 564 N.Y.S.2d 576 (3d Dept), appeal dismissed,
77 N.Y.2d 940, 569 N.Y.S.2d 613, 572 N.E.2d 54 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . 13

*Holy Spirit Asso. for Unification of World Christianity v. New York Times Co.*,
49 N.Y.2d 63, 399 N.E.2d 1185, 424 N.Y.S.2d 165 (N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Illiano v. Mineola Union Free Sch. Dist*., 585 F. Supp. 2d 341 (E.D.N.Y. 2008)  . . . . . . . . . . . . . 16

*Jute v. Hamilton Sundstrand Corp*., 420 F.3d 166, 178 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 11

*Kelly v. Albarino*, 485 F.3d 664 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lacher v. Engel*, 33 A.D.3d 10, 817 N.Y.S.2d 37 (1st Dept 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*MacSweeney v. ING Life Ins. & Annuity Co*., No. 11 Civ. 971 (VB),
2011 U.S. Dist. LEXIS 117538, 2011 WL 4839086, at *6 (S.D.N.Y. Oct. 12, 2011) . . . . . . . . . . . 9

*McNair v. N.Y. City Health  & Hosp. Co*., 160 F.Supp.2d 601 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . 15

*Officemax Inc. v. Cinotti,* 966 F. Supp. 2d 74 (E.D.N.Y. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Pantchenko v. C.B. Dolge Company, Inc*., 581 F.2d 1052 (2d Cir. 1978). . . . . . . . . . . . . . . . . . . . . 11

*Patrowich v. Chemical Bank*, 63 NY2d 541, 473 NE2d 11, 483 NYS2d 659 (1984). . . . . . . . . . . . 9

*Penberg v. HealthBridge Mgmt*., No. 08 CV 1534 (CLP), 2010 U.S. Dist. LEXIS
111140 (E.D.N.Y. Oct. 19, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pilgrim v. McGraw-Hill Companies, Inc*., 599 F. Supp. 2d 462 (S.D.N.Y. 2009) . . . . . . . . . . . . . . 15

*Rabiea v. Stein*, 2010 NY Slip Op 241, 69 A.D.3d 700, 893 N.Y.S.2d 224
(App. Div. 2nd Dept.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Schanfield v. Sojitz Corp. of Am*., 663 F. Supp. 2d 305 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . 16

*Tannerite Sports, LLC v. NBC Universal News Grp*., 864 F.3d 236,
No. 15-3485-cv, 2017 U.S. App. LEXIS 13380, 2017 WL 3137462
(2d Cir. July 25, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc*.,
413 F. Supp. 555 (S.D.N.Y. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . 16

*Trivedi v. N.Y.S. Unified Ct. Sys. Office of Ct. Admin*., 818 F. Supp. 2d 712
(S.D.N.Y. 2011), aff'd, 582 F. App'x 47 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United Mine Workers v. Illinois Bar Ass'n,* 389 U.S. 217 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Williams v. Williams,* 23 N.Y.2d 592, 246 N.E.2d 333, 298 N.Y.S.2d 473 (N.Y. 1969) . . . . . . . . 24

*Zirn v. Cullom*, 187 Misc. 241, 63 N.Y.S.2d 439 (Sup. Ct. N.Y. Co. 1946) . . . . . . . . . . . . . . . . . . 23

<u>Statutes</u>

2019 NY Senate Bill 6577. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

NYC Administrative Code 8-107.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

N.Y. C.P.L.R. § 215(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25

N.Y. Civil Rights Law § 74 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24, 27

N.Y. Exec. Law § 296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . 19

N.Y. Exec. Law § 297(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Rules

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

Defendant Donald Lewis respectfully submits this Memorandum of Law in support of his Motion, pursuant to Fed. R. Civ. P. 12(b)(6), to Dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

This is a retaliatory lawsuit disguised as sexual harassment and defamation claims filed almost two years after Plaintiff's employer, and nominal defendant Pierce Bainbridge Beck Price & Hecht LLP ("Pierce Bainbridge"), wrongfully ousted their law partner Lewis for whistleblowing. The "new" allegations do not cure the defects of the Amended Complaint which includes conclusory pleadings, threadbare allegations, internal inconsistences, and time-barred claims:

- it alleges in conclusory terms that Lewis was Plaintiff's "employer" which is directly contradicted by the Complaint itself which avers that through October 2018, when Plaintiff allegedly reported the fictitious July 2018 incident of harassment, Lewis was not her supervisor, but "was going to be promoted to the position of Assigning Partner" (Amended Complaint ("AC") ¶ 57, (emphasis supplied));[1]
- it is based upon post-employment and protected actions, *i.e.*, Lewis's 2019 New York state court actions where he maintained Plaintiff's anonymity as "Jane Doe" while defending her fictionalized claims of assault which publicly destroyed his reputation and legal career;
- it is untimely as it was filed beyond the applicable one-year statute of limitations of the New York State Human Rights Laws;
- it alleges in conclusory terms discrimination, retaliation, and disparate treatment of Plaintiff, even though it  does not, because it cannot, plead any adverse employment actions, and instead pleads just the opposite:  promotion, praise and continued employment;
- it posits the retaliation claims on reportage of Lewis's 2020 motion to disqualify Plaintiff's counsel in this retaliatory action;
- it posits the time-barred defamation claim on Lewis's state court complaints which are also absolutely protected by the litigation privilege;
- it posits the defamation claim on reportage which are in fact direct quotes from related New York and California state court pleadings which are also absolutely protected by litigation privilege; and
- it posits the defamation claim on reportage which is protected by the "fair and true" report privilege.

---

[1] See Amended Complaint attached to the Affidavit of Juan C. Fernandez ("Fernandez Decl. Exh. __") as Exhibit A.  The original Complaint filed on August 6, 2020 is referred to as the "Complaint" or "Cmplt."

These defects are fatal, not cured by the amendment and cannot be cured by further amendment.

Educated in the obvious defects of her federal court action, Plaintiff's second attempt to articulate a retaliation claim fares no better.  Plaintiff lifts conclusory quotes and false statements from state court pleadings filed by co-defendant Pierce Bainbridge a week before the Amended Complaint was filed. This obviously orchestrated effort by Plaintiff's counsel and her former employer merely accentuates the inherent flaws of the Amended Complaint as detailed below.

Defendant Donald Lewis was a former partner of Defendant Pierce Bainbridge who blew the whistle on the firm's financial misconduct in October 2018.  The firm used Kyle's – then Jane Doe – fabricated sexual harassment claims to muzzle Lewis.  When Lewis complained to his partners about the sham investigation of those false claims, that was also shut down immediately: the firm terminated Lewis mere hours later with a bogus claim that this communication with his partners was grounds for termination.  But the firm's effort to silence Lewis did not stop there. Pierce Bainbridge pretended to engage in settlement negotiations while it filed papers under seal attempting to enjoin Lewis from filing his Complaint and publicly exposing the firm's financial misconduct.   When that did not work, the firm attacked again.  Pierce Bainbridge used the settlement negotiations as a basis for its bogus "civil extortion" claim coupled with sham defamation claims in a Complaint filed in Los Angeles hours after Lewis's New York filing.[2]  The knock-out punch was landed when the firm managing partner used the sham Los Angeles Complaint to smear Lewis as a "terrorist" and "sexual predator"  on social media and urged the other partners to join in, which they did.

---

[2] *Pierce Bainbridge Beck Price & Hecht LLP v. Lewis*, California Superior Court, Los Angeles County, Case No. 19STCV16890 (May 15, 2019) (the "LAC") (Fernandez Decl. Exh. D).

However, Lewis continued the fight to clear his name.  Within a year he was proven right: the firm's financial misconduct, detailed and documented in his Complaints,[3] was validated, a mass exodus of partners followed, and the firm imploded under $65 million in debt.  But that was not the end of the firm's smear campaign using Jane Doe as their weapon.

Jane Doe surfaced, still a Pierce Bainbridge employee, unexpectedly eight months into the Lewis litigation. Eschewing the protection of filing under seal, Jane Doe used the pretext of "anonymity" concerns (although Lewis had scrupulously kept her identity a secret) and protection of "sensitive facts" (which the firm had already revealed the year before in its Los Angeles Complaint) to oppose Lewis's motion to unseal the firm's secret injunctive pleadings and obtain the investigation report.  So while complaining in this federal court action of being "dragged [] into his food fight with Pierce Bainbridge in open court," (AC ¶ 92), Jane Doe willingly and publicly entered the state court fray for one purpose: to publicly defame Lewis in her December 2019 sworn Affidavit falsely declaring she had been "sexually assaulted" by Lewis.  Lewis had no choice but to counter the new defamatory smear by Jane Doe – and the firm – with a reciprocal defamation complaint against Jane Doe.  Pierce Bainbridge continued its smear campaign, but now in the federal forum.

Two years after fabricating claims of sexual harassment and Lewis's firing, Jane-Doe-now-Kyle, still a Pierce Bainbridge employee,[4] filed this untimely federal action, changed her stories, and characterized her false claims as "assault," complaining of Lewis's post-employment and

---

[3] *Lewis v. Pierce Bainbridge, et al*., Index No. 652981 (N.Y.Cty. 2019) ("Lewis I") (Fernandez Decl. Exh. F) and *Lewis v. Pierce Bainbridge, et al*, Index No. 155686 (N.Y.Cty. 2019) ("Lewis II") (Fernandez Decl. Exh. G).
[4] Kyle was still employed by Pierce Bainbridge as of November 2020 according to pleadings filed in the Federal District Court of Connecticut. (See Fernandez Decl. Exh. N).

absolutely privileged conduct:  filing lawsuits for the damage inflicted by the firm and her false allegations, and press coverage of those lawsuits.

This federal action is right out of the Pierce Bainbridge playbook:  file a sham Complaint filled with lurid and false details, concoct a crime out of settlement negotiations, and then use the self-serving Complaint in a social media campaign to smear and marginalize Lewis.

In a new twist, however, Pierce Bainbridge is facilitating the sham lawsuit behind the scenes by pretending to be a party-defendant.  The Pierce Bainbridge "defense" is as defective as the Complaints. After defaulting in several actions filed by creditors and facing millions of dollars in default judgments,[5] Pierce Bainbridge hired defense counsel to timely file an Answer to the original Complaint.  Despite touting itself as "a courtroom special operations force dedicated to the lost art of combat by trial,"[6] the firm surrendered before the battle even began by (1) failing to file a motion to dismiss the facially defective Complaint; (2) filing an Answer admitting all of the allegations against Lewis while claiming insufficient knowledge "to either admit or deny" its employee's allegations against it; (3) failing to assert a single affirmative defense, and (4) publicly lauding the Kyle Complaint in the press which included a peculiar reference to "strict liability."[7]

---

[5] See list of Requests to Enter Default and Default Judgments against Pierce Banbridge (Fernandez Decl. Exh. O).

[6] See Pierce Bainbridge website (Fernandez Decl. Exh. U).

[7] Pierce Bainbridge partner John Pierce's August 6, 2020, statement to the ABA Journal: "We stand in firm support of the principle that all individuals who report allegations of sexual harassment or assault deserve to have those allegations fully investigated and have their day in court. We also stand in firm opposition to anyone who attempts to retaliate. Ms. Kyle did a terrific job for Pierce Bainbridge. She deserves justice and to be able to move on with her life once these allegations are litigated. The firm is aware there are strict liability laws that apply to employers in New York, and we will fully cooperate with the judicial process." Debra Cassens Weiss, Former Pierce Bainbridge Paralegal Sues Firm and Ex-Partner Over Alleged Sex Assault, ABA Journal, https://www.abajournal.com/news/article/former pierce-bainbridge-paralegal-sues-firm-fired-partner-for-alleged-harassment (last accessed May 17, 2021) (Fernandez Decl. Exh. T).

The latest twist is Pierce Bainbridge's use of its coordinated federal court action to stay the arbitration of Lewis's state court actions – and Judgment Day – indefinitely,[8] and for Plaintiff to use Pierce Bainbridge's bogus state court filings to prop up her sham federal action, as discussed *infra*.

The firm has exposed their artifice in their latest lawsuit in federal court.  Until they are stopped, Pierce Bainbridge will continue to weaponize the judicial system against Lewis for their unlawful ends.  Lewis respectfully requests that this Court take that step and dismiss their sham action.

## STATEMENT OF FACTS[9]

Lewis was the first African-American partner of the California-based Pierce Bainbridge law firm, and was recruited  in May 2018 by John Pierce ("Pierce") to co-found and expand the firm's Manhattan office.  (Lewis AC ¶ 78).   In June 2018, Pierce Bainbridge hired Selina Kyle ("Kyle") as a legal assistant although she had no legal experience.  (AC ¶ 19).

In October 2018, the firm's bookkeeper informed Lewis of illicit financial activity by the firm's Managing Partner Pierce. (Lewis AC ¶ 80). Lewis reported his concerns to Pierce about his financial malfeasance. (Lewis AC ¶ 81).   Pierce immediately retaliated by immediately banning Lewis from the firm and placing him on "administrative leave," based upon alleged sexual harassment which had occurred on July 7 but allegedly was not reported until October 4 by a female employee (the "False Accuser"). (Lewis AC ¶¶ 51, 82).   Lewis steadfastly maintained the

---

[8] Lewis I, Dkt. Nos. 264-266 (N.Y. Cty. March 30, 2021).

[9] These facts are set forth in the Amended Complaint (the "Lewis AC ¶ __") filed in *Lewis v. Jane Doe*, Index No. 650644/2020, Dkt. 26 (N.Y.Cty. August 31, 2020) (the "Lewis-Doe Defamation Action") (Fernandez Decl. Exh. I).

allegations were completely false and part of the cover-up orchestrated by Pierce to silence Lewis from exposing Pierce's gross self-dealing and misappropriation of firm funds. (Lewis AC ¶ 83).

The firm hired outside counsel Putney Twombly ("Putney") to "investigate" the false allegations. (Lewis AC ¶ 84). After repeated requests, Putney finally provided Lewis's counsel with information about the alleged July 7 incident which allowed Lewis to demonstrate unequivocally the incident never occurred.  (Lewis AC ¶ 89).  After receiving that exculpatory evidence, Putney recanted the provided details. (Lewis AC ¶¶ 89, 92).  On November 8, Lewis's counsel documented the serious flaws of the Putney "investigation" including its failure to follow New York State sexual harassment investigation guidelines. (Fernandez Decl. Exh. C).

On November 12, Lewis forwarded his counsel's letter to his partners to expose the firm's illicit financial activity and the sham investigation. Within hours, Pierce retaliated again and, without a vote of the partners,  unlawfully expelled Lewis from the firm.  (AC ¶ 70; Lewis AC ¶¶ 32, 83).

Settlement negotiations ensued in March 2019 but the firm did not participate in  good faith.  After Lewis communicated he was about to file his Complaint for wrongful and retaliatory termination, *inter alia*, on May 15, 2019, Pierce Bainbridge raced to file an *ex parte* action in New York Supreme Court to enjoin Lewis from filing his Complaint and a sealing order (the "Sealed Action").[10]  Losing that battle, Pierce Bainbridge then used the confidential settlement negotiations as a basis for its bogus "civil extortion" claim, and  revealed new details about the False Accuser and the July 7 incident in its Los Angeles Complaint filed hours after Lewis's New York filing. (See Fernandez Decl. Exh. D).   The LAC was ultimately dismissed but not before Pierce used social media to brand Lewis as a "sex predator."  (Lewis AC ¶ 23).  On June 7, 2019, Lewis then

---

[10] *Pierce Bainbridge Beck Price & Hecht LLP v. Lewis, et al*., Index No. 154910/2019 (N.Y. Cty. May 15, 2019).

filed the Lewis II defamation action against his former firm and partners.   (Fernandez Decl. Exh. G).

Jane Doe surfaced in the Lewis litigation in January 2020 to oppose Lewis's motion to unseal the Sealed Action and obtain the Putney report, using the pretext of "anonymity" concerns (although Lewis had kept her identity a secret), and publicly filed an  Affidavit falsely declaring she had been "sexually assaulted" by Lewis.  (Fernandez Decl. Exh. H).

On January 27, 2020, Lewis filed a defamation action against Jane Doe for her  false and defamatory Affidavit (the "Lewis-Doe Defamation Action").  (Fernandez Decl. Exh. I). On August 6, 2020, Jane Doe emerged once again as Selina Kyle to file this action, further exposing the "anonymity concerns" she posited in her state court Affidavit as a sham.  (Fernandez Decl. Exh. A).

## LEGAL ARGUMENT

<u>The Legal Standard</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).

A complaint is not satisfied by "an unadorned, the-defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Neither a "formulaic recitation of the elements of a cause of action" nor "naked assertions [of fact] devoid of further factual enhancement" is sufficient to withstand dismissal.  *Id*.  To satisfy the *Twombly* and *Iqbal* standards, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (citing Twombly, 550 U.S. at 570).  A claim has facial

plausibility when the plaintiff pleads enough factual content that allows the court to draw a reasonable inference that the defendant is liable under the alleged claim. *Id*. (citing Twombly, 550 U.S. at 556). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Even if a court decides that the factual allegations are entitled to an assumption of truth, however, the facts must also "plausibly suggest an entitlement to relief." *Id.* at 1951. Finally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Simply stated, the Amended Complaint cannot survive this judicial scrutiny.

<u>Point I</u>

**THE NYHRL CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO ESTABLISH LEWIS WAS HER EMPLOYER**

The Amended Complaint alleges in conclusory terms that Lewis was Plaintiff's "'employer' under all relevant statutes," (AC ¶ 17), or "was certainly Ms. Kyle's supervisor." (AC ¶ 104). However, these conclusory statements are directly contradicted by the Amended Complaint itself which avers that through October 2018, when Plaintiff allegedly reported the fictitious July incident, Lewis was not her supervisor:

- [Lewis] "<u>was to be promoted</u> to a position in which he <u>would be supervising</u> numerous women." (AC ¶ 6) (emphasis supplied).
- [Lewis] "<u>was going to be promoted</u> to the position of Assigning Partner." (AC ¶ 57) (emphasis supplied).

This is further confirmed by Jane Doe's sworn retaliatory Affidavit:

In October 2018, I learned that <u>Mr. Lewis was going to become</u> the "assigning partner." This meant that he <u>would have</u> direct control over my work and case load as well as be

a more active presence in the office.  I thought about quitting.  I could not stand the thought of having my <u>attacker become my supervisor</u>.

(See Fernandez Decl. Exh. H, ¶ 8 (emphasis supplied).

Plaintiff also admitted her supervisor was "the Supervising Managing Paralegal," to whom she allegedly reported the July incident.  (AC ¶ 61).  Thus, according to Plaintiff's own words, Lewis was not her supervisor throughout his six-month tenure at the firm.

New York has adopted the "economic reality test" for determining who may be sued as an "employer" under the Human Rights Law.  *Patrowich v. Chemical Bank*, 63 NY2d 541, 543, 473 NE2d 11, 483 NYS2d 659 (1984).  This test requires the plaintiff to show the putative employer has "an [] ownership interest [in the company] or power to do more than carry out personnel decisions made by others."  *Patrowich* at 543-544.

"To determine whether a defendant is an 'employer' within the meaning of the NYSHRL, the Court examines whether the alleged employer: (1) had the power to hire employees; (2) made the payment of salary or wages to the employee; (3) had the power of dismissal over the employee; and (4) had the power to control the employee's conduct."  *MacSweeney v. ING Life Ins. & Annuity Co.*, No. 11 Civ. 971 (VB), 2011 U.S. Dist. LEXIS 117538, 2011 WL 4839086, at *6 (S.D.N.Y. Oct. 12, 2011) (citing, *inter alia*, *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).  "The fourth factor is most important."  *Id*.

Plaintiff's own Complaints allege that name partners Price and Hecht were the ones with "the power to control [her] conduct" as it states they "ordered Ms. Kyle to stop working on [a Lewis] assignment."  (AC ¶ 40).  In addition, Lewis is not alleged to have hired or promoted Plaintiff or to have had anything to do with either decision.  (AC ¶ 20).

In order to rehabilitate her flawed claims, Plaintiff points to Lewis's status as a firm partner to conclude he was her "supervisor,"  which is directly contradicted by her earlier allegations.

Further, Lewis's partnership status changes depending upon which court Pierce Bainbridge finds itself in, and the legal whiplash is becoming predictable.   According to Defendant Pierce Bainbridge's state court filings, Lewis was a mere "W-2 employee terminable at will who simply had the title of non-equity "partner" to assist in business development efforts."  (Fernandez Decl. Exh. B, ¶ 17).  According to the firm's former employee's federal court filing on April 7, 2021, Lewis is a "partner" seven times over in her Amended Complaint.  (AC ¶¶ 3, 17, 21, 57, § H, 95, 97).  Back again in state court three weeks later, former Pierce Bainbridge name partner and Defendant David Hecht filed an Affidavit under  penalty of perjury in the Lewis I state court action claiming:  "Complete management control over Pierce Bainbridge was held by the sole equity partner, [John Pierce] not by me."  (Hecht Affirmation, Lewis I, Dkt. 349, ¶ 10 (N.Y.Cty. April 28, 2021) (Fernandez Decl. Exh. K).

The addition of 12 new conclusory allegations – a newspaper article (AC ¶ 106), work assignments (AC ¶ 110-113), membership on the firm's attorney recruiting committee (AC ¶ 115), lobbying the "sole equity partner" John Pierce to terminate an employee (AC ¶ 116), and a suggestion without more that Lewis had a "significant influence over perceptions of her work" by unnamed partners (AC ¶ 114) – still do not satisfy the conduct control element.  If Defendant had the requisite "power to control the employee's conduct," Kyle would have been fired, not Lewis.  Plaintiff and her employer Pierce Bainbridge have established that Lewis was not her supervisor or employer under the New York Human Rights laws.

<u>Point II</u>

**THE NYHRL CLAIMS SHOULD BE DISMISSED BECAUSE LEWIS  ENGAGED IN ABSOLUTELY PROTECTED POST-EMPLOYMENT ACTIONS**

Plaintiff alleges Lewis violated the New York Human Rights Laws by filing post-employment wrongful termination and defamation lawsuits against his former firm – and her

employer – which "dragged her into his food fight with Pierce Bainbridge," (AC ¶ 92), and an alleged "retaliatory lawsuit" against her.  (AC ¶ G).  Missing from the Amended Complaint, however, are critical facts which demonstrate the absurdity of Plaintiff's claims:

1) the firm retaliated against Lewis and ousted him for reporting firm financial misconduct, a "protected activity" under the New York Human Rights Laws;
2) Lewis  then filed lawsuits against his former firm – not Jane Doe – for their retaliatory termination;
3) 16 months after his retaliatory firing, Pierce Bainbridge employee Jane Doe unnecessarily intervened in Lewis's motion to unseal the Sealed Action for no other purpose than to retaliate against Lewis, but this time with a publicly filed false Affidavit accusing him of sexual assault; and
4) Lewis then filed a defamation lawsuit against Jane Doe for her retaliatory Affidavit.

These critical facts demonstrate that the critical causal links to support Plaintiff's Human Rights Laws claims are also missing from the Amended Complaint.  There was no employment relationship.  There was no "tangible employment action" which affected Jane Doe, now Plaintiff in this action, before or after Lewis was fired.  The three Lewis lawsuits, the Jane Doe retaliatory Affidavit, and this Pierce Bainbridge/Kyle retaliatory lawsuit were all filed after Lewis was unlawfully terminated and while Kyle was a Pierce Bainbridge employee, lauded, promoted, and employed until the firm's demise (AC ¶¶ 20, 77, 78 (the "Positive Employment Actions")).

Further, none of the retaliation claims falls within the limited circumstances permitting an employee to pursue her former employer for post-employment conduct such as refusing to provide a letter of recommendation (*Pantchenko v. C.B. Dolge Company, Inc*., 581 F.2d 1052, 1055 (2d Cir. 1978)), or giving a negative job reference (*Jute v. Hamilton Sundstrand Corp*., 420 F.3d 166, 178 (2d Cir. 2005)).

The overarching problem with the retaliation claims is context:  Kyle continued to attack Lewis after his retaliatory firing.  She improperly intervened in the Sealed Action for no other purpose than to retaliate against and defame Lewis 16 months after his retaliatory firing.  Eight

months later, Kyle continued her attack by filing this retaliatory action against Lewis, not the other way around, two years after his retaliatory firing.

To accept Plaintiff's tortured claims in this amended but nevertheless flawed Complaint is to leave Lewis with two choices: (1) permit Plaintiff to file a false and retaliatory Affidavit against him with impunity; or (2) seek redress for Plaintiff's public character assassination and face yet another retaliatory action by Jane Doe and her employer.  There is simply no factual or legal basis for either inequitable option.

Point III

**THE NYSHRL GENDER DISCRIMINATION CLAIMS ARE TIME-BARRED**

The Amended Complaint alleges violations of the NYSHRL including gender discrimination and aiding and abetting gender discrimination  (First and Second Counts).  The statute of limitations for a claim of "unlawful discriminatory practice" in violation of the New York State Human Rights Laws is one year.  N.Y. Exec. Law § 297(5).  The claims for alleged NYSHRL violations were filed on August 6, 2020, two years after the alleged July 2018 incident, are untimely and therefore should be dismissed.

The claims are untimely even under the recent amendments to the NYSHRL.  On August 12, 2019, Senate Bill S6577 (the "Act") was signed into law amending the NYSHRL, and, *inter alia*, increased the civil limitations periods.  2019 NY Senate Bill 6577, § 13 (eff. August 12, 2019) (Fernandez Decl. Exh. M).   However, Section 13 of the Act maintained the one year statute of limitations for unlawful discrimination claims under the NYSHRL:

§ 13. Subdivision 5 of section 297 of the executive law, as amended by chapter 958 of the laws of 1968, is amended to read as follows:

5. **Any complaint filed pursuant to this section must be so filed within one year after the alleged unlawful discriminatory practice.**

12

(The Act § 13 (5) (emphasis supplied)).  The extension of the civil limitations period to three years for sexual harassment claims became effective one year after the Act was signed into law, or August 12, 2020, after the Complaint was filed on August 6, 2020:

> § 16. This act shall take effect immediately, provided, however: 41 (a) Sections one of this act shall take effect on the one hundred 42 eightieth day after it shall have become a law. 43 (b) Sections one-a, two, three, four, five, seven, eight and nine of 44 this act shall take effect on the sixtieth day after it shall have become a law. (c) **Section thirteen of this act shall take effect one year after it shall have become a law.**

(The Act § 16(c), (emphasis supplied)).

The gender discrimination claims under the NYSHRL should be dismissed as time-barred.

<u>Point IV</u>

**THE RETALIATION CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE FACTUALLY ERRONEOUS, INTERNALLY INCONSISTENT AND FAIL TO STATE A PRIMA FACIE CASE**

A.    <u>Legal Standard</u>

To determine whether an employee has plead a *prima facie* case of retaliation, a court examines the Complaint for an allegation of adverse employment action coupled with a causal connection between the protected activity and retaliatory conduct.  *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 411 (S.D.N.Y. 2014) (NYSHRL); *Bliss v. MXK Rest. Corp.*, 220 F. Supp. 3d 419, 424–25 (S.D.N.Y. 2016) (NYSHRL and NYCHRL). A plaintiff must "link the adverse action to a discriminatory or retaliatory motivation" and "allege facts which plausibly suggest that [defendant] undertook the actions that [it] did either out of discriminatory animus or in an effort to retaliate against [plaintiff] for engaging in protected activity."  *Trivedi v. N.Y.S. Unified Ct. Sys. Office of Ct. Admin.*, 818 F. Supp. 2d 712, 743 (S.D.N.Y. 2011), aff'd, 582 F. App'x 47 (2d Cir. 2014).

13

The Amended Complaint fails this test:  no adverse employment action was alleged, but instead it acknowledges the Positive Employment Actions.  Naturally, there is no required causal link.  Therefore, the retaliation claims are defective.

B.    <u>The Amended Complaint Pleads Positive – Not Adverse – Employment Actions</u>

The Amended Complaint itself reveals Kyle's retaliation claims are fatally flawed because she was never subjected to any adverse employment action.  Kyle reported the alleged sexual harassment to her supervisors.  (AC ¶¶ E, 61, 62).  The firm responded by launching an investigation.  (AC ¶¶ 65, 66).  Lewis was terminated prior to the conclusion of the investigation because he allegedly violated "the terms of his administrative leave."  (AC ¶ 70).  As the Complaint lays out in glowing detail, both before and after reporting her false claims of sexual harassment, Kyle experienced only the Positive Employment Actions.

It is axiomatic that without the predicate "adverse employment action" there cannot be a causal connection for retaliation.  Therefore, these claims must be dismissed.  Lewis suffered an adverse employment action because he was terminated. Kyle, by her own account, was promoted and stayed employed, first at Pierce Bainbridge (until it closed its New York office) and then at a firm, Hecht and Partners, consisting of former Pierce Bainbridge partners who continued to correspond on their Pierce Bainbridge e-mail accounts.  (See Fernandez Decl. Exh. N).

C.    <u>The Causal Connection Is Missing</u>

The requisite causal connection, no matter what type, simply does not exist, and renders Plaintiff's claims nonsensical.  Quite simply there was no adverse employment action and to suggest, as Plaintiff does, that somehow the "adverse employment action" is the Lewis-Doe Defamation Action, filed 16 months post-employment and in direct response to Kyle's affirmative and defamatory pleading, turns the law on its head.

14

Furthermore, there is no "temporal" connection:  that "the retaliatory action occurred close in time to the protected activities."  *McNair v. N.Y. City Health  & Hosp. Co*., 160 F.Supp.2d 601, 604 (S.D.N.Y. 2001) (citing *DeCintio v. Westchester Cnty. Med. Center*, 821 F.2d 111, 115 (2d Cir. 1987)). To establish a causal connection based on temporal proximity, "a plaintiff must, at a minimum, introduce evidence that the protected activity in question occurred <u>before</u> the adverse employment action." *Carmellino v. Dist. 20 of N.Y. City Dep't of Educ*., No. 03 Civ. 5942 (PKC), 2006 U.S. Dist. LEXIS 63705, 2006 WL 2583019, at *19 (S.D.N.Y. Sept. 6, 2006).

There is also no "inference" of a causal connection.  While there is no "bright line" test for the causal relationship, district courts in the Second Circuit have consistently held that "a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation."  See *Garrett v. Garden City Hotel, Inc*., No. 05-CV-962, 2007 U.S. Dist. LEXIS 31106, at *69-70 (E.D.N.Y. Apr. 19, 2007)  (quoting *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001)) (collecting cases).

D.   <u>Even The "Reasonable Deterrence" Requirement Is Missing</u>

To prevail on a NYCHRL retaliation claim,[11] a plaintiff must show: "1) [she] engaged in a protected activity; 2) [her] employer was aware of that activity; 3) [she] suffered an action  that would be reasonably likely to deter a person from engaging in a protected activity; and 4) that there was a causal connection between the protected activity and the action." *Pilgrim v. McGraw-Hill Companies, Inc*., 599 F. Supp. 2d 462, 469 (S.D.N.Y. 2009) *see also Dixon v. Int'l Fed. of Accountants*, 416 Fed. Appx. 107, 110 n.1 (2d Cir. 2011) (same).  The Complaint also fails the deterrence test.

---

[11] NYC Administrative Code 8-107.1.

Jane Doe falsely accused Lewis of sexual harassment.  He was unlawfully terminated. Pierce Bainbridge promoted her. Jane Doe waited 16 months and then filed a public Affidavit defaming Lewis.  She continued to receive a paycheck from Pierce Bainbridge.  Jane Doe then emerged as Selina Kyle 21 months later to file this action feigning fear of the Lewis-Doe Defamation Action which purportedly "discouraged her from ever taking any action or testifying against Mr. Lewis."  (AC ¶ 84).  This is simply belied by Kyle's actions:  nothing has "deterred" her from attacking Lewis.

E.        The Lewis-Doe Defamation Lawsuit Is Not Actionable

In order to be actionable, an <u>employer's</u> lawsuit must be meritless.  *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 343 (S.D.N.Y. 2009); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472-73 (S.D.N.Y. 2008) (holding that only "[b]ad faith or groundless counterclaims and other legal proceedings against employees who assert statutory rights are actionable retaliation").  Where an employer's lawsuit has been deemed retaliatory, however, it was coupled with the employer's explicit threat to sue an employee if she pursued her discrimination claims. *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 352 (E.D.N.Y. 2008).  That is not the case here.

<u>First</u>, as established *infra*, Lewis was not Kyle's employer.

<u>Second</u>, Lewis's defamation lawsuits against his former firm, and his claims that he was falsely accused by Jane Doe, are not baseless in fact or law.

<u>Third</u>, the Lewis-Doe Defamation Action was in direct response to and entirely premised on Kyle's 3false and defamatory Affidavit – filed 16 months after her report of the alleged July incident and his illegal ouster – and clearly not retaliatory.

16

<u>Finally</u>, Lewis has a First Amendment right to seek redress in the courts which is recognized as one of "the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers v. Illinois Bar Ass'n,* 389 U.S. 217, 222 (1967).

Improperly weaponizing New York's Human Rights Laws with concocted retaliation claims, Kyle and her counsel have turned the shield of employment law, protecting employees from unlawful retaliatory conduct, into a sword against Lewis to prevent him from seeking vindication of his rights and clearing his name. *Penberg v. HealthBridge Mgmt.*, No. 08 CV 1534 (CLP), 2010 U.S. Dist. LEXIS 111140, at *17 (E.D.N.Y. Oct. 19, 2010).

F.      <u>The Discriminatory Animus Is Missing</u>

The Amended Complaint also fails to plead an inference of discriminatory animus, and does not even plead a single discriminatory statement directed by Lewis towards Plaintiff.  The Amended Complaint offers nothing more than Plaintiff "was impacted by his actions and whisper campaign against her after the assault" (AC ¶ 104) and his "significant influence over perceptions of her work." (AC ¶ 114).  But an unspecified "whisper campaign" does not rise to the level of a negative employment action. Even a negative performance review without more, does not constitute an adverse employment action. See *Fairbrother v. Morrison*, 412 F.3d 39, 56-57 (2d Cir. 2005).

G.      <u>The New Retaliation Claims Are Not Fact-Based But Illusory</u>

Implausibly, the Amended Complaint attempts to fashion a new retaliation claim by connecting (1) Lewis's motion to disqualify Plaintiff's counsel in this action[12] (AC ¶ 98), and (2)

---

[12] The Court found the disqualification issue to be:  ". . . an interesting one, an important one, and was something that was not obviously frivolous. I suppose, in a relative sense, it was a close question, although I have no concerns about the decision that I've just issued, but, to be clear, it was not a frivolous motion. It was an appropriate motion to bring." (Dkt. 34, T15:14-22).

the November 2020 reportage about the motion ruling (AC ¶¶ 99, 100), to (3) the claims of her current employer – former Pierce Bainbridge partner Hecht – that Lewis is retaliating against <u>him</u> for employing Kyle. (AC ¶ 101). However, an essential element of the "causal connection" for a retaliation claim is missing because the alleged target of this new retaliation is Kyle's current employer, Hecht, not her. Again, no adverse employment consequence is alleged. This new retaliation claim is based on nothing more than the word "retaliation" lifted from a March 30, 2021, state court filing by Plaintiff's current employer and former Pierce Bainbridge name partner Hecht. (AC ¶ 101).

Pierce Bainbridge's use of the term "retaliatory" in the same March 30th filing also found its way into the Amended Complaint:

> In a recent filing in State Court, Pierce Bainbridge alleges that on November 13, 2018, Mr. Lewis sent an email to nineteen partners and "threatened that if his termination was 'immediately rescinded,' he would bring **retaliatory lawsuits** against the firm, the individual partners, [Ms. Kyle], and Independent Counsel." Lewis v. Pierce Bainbridge Beck Price & Hecht LLP, et al., Index No. 652931/2019, Dkt. Nos. 264 and 274 (N.Y. Cty. March 30, 2021).

(AC ¶ 71 (emphasis supplied). But it was actually Lewis in his oft-quoted November 8, 2018 email to his partners who catalogued the retaliatory acts of Pierce Bainbridge:

> All:
>
> John Pierce purported - unlawfully - to terminate me at 7:38 p.m. last night, less than five hours after my circulation of the "Letter to Yim" at 3:01 p.m. yesterday to each of you, per the original email in this chain. Mr. Pierce's attempt to terminate me **is clearly in retaliation for the allegations detailed in that letter, including my claims of discrimination.** The termination e-mail from Mr. Pierce, who neglected to copy you all, and remains unwilling to have a conversation, is attached. There was, as I can surmise, no vote by the Partners to terminate me.
>
> As noted in the Letter to Yim, and if my unlawful termination is not immediately rescinded, we intend to file claims against Pierce Bainbridge, Putney Twombly, and individually against John Pierce, Carolynn Beck, REDACTED, Jim Bainbridge, Michael Yim and "John-Does" (which shall include anyone who has condoned and/or ratified the ethically depraved and unlawful conduct concerning

my leave, the related sham "investigation" **and my retaliatory termination**). We
intend to seek joint and several liability wherever appropriate

(Lewis I, Dkt. No. 274, Exhibit G (N.Y. Cty. March 30, 2021) attached to Fernandez Decl. as Exh.

L (emphasis supplied)).  Kyle's new claims of retaliation are simply not fact-based and nothing

more than illusory concoctions of Pierce Bainbridge and Hecht who are defending their retaliatory

firing of Lewis in concurrent state court actions.

Therefore, the retaliation clams should be dismissed.


Point V

**THE AMENDED COMPLAINT DOES NOT SATISFY THE ELEMENTS OF
"UNLAWFUL DISCRIMINATORY PRACTICE" AS DEFINED BY THE NYSHRL
AND THEREFORE SHOULD BE DISMISSED**

An "unlawful discriminatory practice" under the NYSHRL requires an employer to subject

an employee to a negative employment action in "compensation"  or "inferior terms, conditions or

privileges of employment."  N.Y. Exec. Law § 296(1)(a) and (h).  The Amended Complaint fails

to allege in its 150 paragraphs that Kyle was ever subjected to a single negative employment action.

While using conclusory terms to fabricate NYSHRL violations, the Amended Complaint details

only the Positive Employment Actions.

The Amended Complaint offers nothing more than Plaintiff  "was impacted by [Lewis's]

actions and whisper campaign against her after the assault." (AC ¶ 104). This is clearly insufficient

under N.Y. Exec. Law § 296(1)(h) which specifically enacted an affirmative defense against

claims for "petty slights or trivial inconveniences":

> It shall be an affirmative defense to liability under this subdivision that the
> harassing conduct does not rise above the level of what a reasonable victim of
> discrimination with the same protected characteristic or characteristics would
> consider petty slights or trivial inconveniences.

As noted above, even a negative performance review is insufficient. Therefore, the claims for violation of the NYCHRL should be dismissed.

Point VI

**THE DEFAMATION CLAIM SHOULD BE DISMISSED BECAUSE IT IS BASED UPON STATEMENTS PROTECTED BY THE ABSOLUTE LITIGATION PRIVILEGE AND THE PROTECTION OF N.Y. CIVIL RIGHTS LAW § 74**

A.    The Legal Standard

Under New York law, "[t]o prove a claim for defamation, a plaintiff must show: [i] a false statement that is [ii] published to a third party [iii] without privilege or authorization, and that [iv] causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Tannerite Sports, LLC v. NBC Universal News Grp*., 864 F.3d 236, No. 15-3485-cv, 2017 U.S. App. LEXIS 13380, 2017 WL 3137462, at *5 (2d Cir. July 25, 2017) (internal quotation marks omitted) (quoting *Stepanov v. Dow Jones & Co*., 120 A.D.3d 28, 987 N.Y.S.2d 37, 41 (1st Dept 2014)).  A "statement is not defamatory if it is privileged or authorized." *ABKCO Music, Inc. v. William Sagan, Norton LLC*, 2016 U.S. Dist. LEXIS 60778, 2016 WL 2642224, at *3 (S.D.N.Y. May 6, 2016) (citing *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009)).

B.    Summary of Plaintiff's Defamation Claims

The defamation claims fall into four categories which are absolutely protected by the litigation or the "fair and true report" privilege of  N.Y. Civil Rights Law § 74 ("Section 74"):

(1) Statements made in the 2019 Lewis I and II Complaints, Amended Complaints and Exhibits to the Complaints (AC ¶¶ 72-76; 79-82);

(2) Statements made in the 2020 Lewis-Doe Defamation Action (AC ¶¶ 91-95);

(3)  Confidential communications between counsel in the Lewis-Doe Defamation Action (AC ¶ 96); and

(4)  Statements in reportage of the lawsuits (AC ¶¶ 85-88).

20

C.    The Defamation Claims Arising Out Of The 2019 Lewis Lawsuits Are Time-Barred

The Complaint filed on August 6, 2020, alleges Jane Doe was defamed in the May and July 2019 Complaints that Lewis filed against his former firm  (AC ¶¶ 72-84).  Those claims were filed beyond the one year statute of limitations and must be dismissed.  N.Y. C.P.L.R. §215(3).

D.    The Lewis Lawsuits Are Absolutely Protected By The Litigation Privilege

It is well-established under New York law that statements made in pleadings, in court, between attorneys and parties, and during settlement discussions are absolutely protected by the litigation privilege.  *Aequitron Med., Inc. v. Dyro*, 999 F. Supp. 294, 298 (E.D.N.Y. 1998) (citing *O'Brien v. Alexander*, 898 F. Supp. 162, 171 (S.D.N.Y. 1995); see also *Kelly v. Albarino*, 485 F.3d 664, 666 (2d Cir. 2007) (per curiam) ("[T]his is the broadest of possible privileges and any matter which, by any possibility, under any circumstances, at any stage of the proceeding, may be or may become material or pertinent is protected by an absolute privilege even though such matter may be ineffectual as a defense.")

Thus, "allegedly defamatory statements are protected if they may possibly be pertinent to a proceeding." *The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc*., 413 F. Supp. 555, 561 (S.D.N.Y. 1976) (all that is needed to claim the privilege is that the alleged defamatory material "may possibly bear on the issues in litigation now or at some future time").

Application of the absolute litigation privilege must result in dismissal of the first three categories of defamation claims:  statements in the Lewis Complaints, and confidential settlement negotiations between counsel in the Lewis-Doe Defamation Action.  Even Jane Doe's own counsel agrees with this result.  In the pending Motion to Dismiss, based upon "ample law," defense counsel asserts the absolute privilege precludes Kyle from filing this very defamation lawsuit against Lewis:

> **Notably, the [absolute] privilege is the only thing stopping Doe from countersuing Lewis for his patently false claims of collusion with Pierce Bainbridge**. Complaint ¶ 94 (stating that Doe is "apparently doing [Pierce Bainbridge's] bidding"). His entire complaint is an extended accusation of perjury, which constitutes defamation per se. See Complaint ¶ 102, "[t]he Defamatory Affidavit … is perjurious".  However, it is not actionable because Lewis is engaging in a "public function" when he communicates with the court via his complaint.

(Defendant's Memorandum of Law in Support of Motion to Dismiss the Complaint, *Lewis v. Jane Doe*,  Index No. 650644/2020, Dkt No. 13, p. 9 (N.Y.Cty. May 29, 2020) (Fernandez Decl. Exh. J (emphasis supplied)).  The absolute privilege is broad and "embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability.  *Grasso v. Mathew*, 164 A.D.2d 476, 478, 564 N.Y.S.2d 576, 578 (3d Dept), appeal dismissed, 77 N.Y.2d 940, 569 N.Y.S.2d 613, 572 N.E.2d 54 (1991).

Clearly, the statements made in the Lewis Complaints meet the very broad pertinence test.  The Lewis Complaints against his former firm and partners seek redress for, *inter alia*, wrongful retaliatory termination and defamation.  These claims arise out of the same nucleus of facts:  Pierce Bainbridge used Jane Doe's fabricated sexual harassment claims to muzzle Lewis's whistleblowing of the firm's financial misconduct.  Jane Doe is an integral part of the firm's collective wrongdoing and her retaliatory Affidavit is simply an extension of their smear campaign.  Thus, one would expect to find Jane Doe's false allegations at the heart of the Lewis Complaints, which they are:  the Lewis I Complaint references Jane Doe's "False Allegations" 56 times, which include variants of the terms in paragraph headings, paragraphs, paragraph subparts, and footnotes.  The Lewis II Complaint contains 58 references to the firm and Jane Doe's false allegations.  Likewise, the Lewis-Doe Defamation Action refers to the False Accuser and her false allegations 43 times.

The Amended Complaint simply restates these allegations which are clearly pertinent to Lewis's multi-front litigation with his former firm and now his false accuser:

- Defining the term "False Allegations" (AC ¶ 73);
- Using the defined term "False Allegations" "dozens of times throughout the complaint" (AC ¶ 73);
- Exposing Jane Doe's changing stories (AC ¶ 73);
- Refuting the "demonstrably false allegations by a junior level employee who was used as a pawn by [Pierce Bainbridge]" (AC ¶ 73);
- Accusing Jane Doe of lying (AC ¶ 93);
- Questioning Jane Doe's credibility (AC ¶¶ 75, 93);
- Exposing Jane Doe's deletion of her social media accounts after the investigation started (AC ¶ 82);
- Naming Jane Doe as a discovery defendant (AC ¶ 79);
- Attaching an Exhibit to the Amended Complaint entitled "False Accuser Inappropriate E-mail to Former Employer of Lewis" (AC ¶ 80);
- Positing that Jane Doe "came forward with an entirely new and independent defamatory publication to demonize Lewis, in an attempt to give credence to her own falsehoods and help out her employer Pierce Bainbridge" (AC ¶ 94);

Even if Lewis filed his Complaints in bad faith, which he did not, the Complaints' allegations are absolutely privileged "notwithstanding the motive with which they are made, so long as they are material and pertinent to the issue to be resolved in the proceeding." *Officemax Inc. v. Cinotti,* 966 F. Supp. 2d 74, 79 (E.D.N.Y. 2013) (citations and internal quotation marks omitted); *see also Rabiea v. Stein*, 2010 NY Slip Op 241, 69 A.D.3d 700, 893 N.Y.S.2d 224 (App. Div. 2nd Dept.)

Unquestionably, there cannot be anything more pertinent – or in fact mandatory – in a defamation action than accusing the defendant of lying and attacking her credibility, which is exactly what Lewis has done, and will continue to do, until his name is cleared.

E.  **The Statements Made By Lewis's Counsel During Settlement Discussions Are Also Protected By The Absolute Litigation Privilege**

Plaintiff and her counsel accuse Lewis's counsel of attempting to suborn perjury during confidential settlement discussions with her counsel in the Lewis-Doe Defamation Action.  (AC ¶ 96).  Even if this outlandish and defamatory allegation were true, which it is not, this claim cannot support a cause of action for defamation because communications between counsel are absolutely

23

privileged. *Zirn v. Cullom*, 187 Misc. 241, 63 N.Y.S.2d 439 (Sup. Ct. N.Y. Co. 1946) (the absolute

privilege applies to statements made by attorneys during settlement discussions); see also *Chutko*

*v. Ben-Ami*, 150 A.D.3d 582, 55 N.Y.S.3d 203 (1st Dept 2017) (granting motion to dismiss by

attorneys accused of defamation in a letter sent in anticipation of litigation).

F.    The Statements Made By Lewis To The Press Are Protected By The "Fair and True"
      Report Privilege of Section 74

New York law recognizes the "fair and true report" privilege which provides that "[a] civil

action cannot be maintained against any person, firm or corporation, for the publication of a fair

and true report of any judicial proceeding." N.Y. Civil Rights Law § 74.  The purpose of Section

74 is "the protection of [the] reports of judicial proceedings which are made in the public interest."

*Williams v. Williams,* 23 N.Y.2d 592, 599, 246 N.E.2d 333, 298 N.Y.S.2d 473 (N.Y. 1969).   The

privilege protects the media as well as litigants who provide a "substantially accurate description"

of the pending litigation. *Fishof v. Abady,* 280 A.D.2d 417, 418, 720 N.Y.S.2d 505 (N.Y. App.

Div. 2001); *Holy Spirit Asso. for Unification of World Christianity v. New York Times Co.*, 49

N.Y.2d 63, 67, 399 N.E.2d 1185, 424 N.Y.S.2d 165 (N.Y. 1979).  This absolute privilege extends

to comments which summarize or restate the allegations of a pleading, (*Lacher v. Engel*, 33 A.D.3d

10, 817 N.Y.S.2d 37, 43 (1st Dept 2006)), and is "not defeated  by the presence of malice or bad

faith." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012) (internal quotation marks

and citations omitted).

Courts liberally construe both the "fair and true" standard."  *Fine v. ESPN, Inc.,* No. 5:12-

CV-0836, 2013 U.S. Dist. LEXIS 17729, 2013 WL 528468, at *3 (N.D.N.Y. Feb. 11, 2013).

Moreover, the issue of whether the publication is a "fair and true" report under Section 74 may be

resolved at the motion to dismiss stage. *ABKCO Music*, 2016 U.S. Dist. LEXIS 60778, 2016 WL

2642224, at *4 (internal quotation marks omitted) (quoting *Test Masters Educ. Servs., Inc. v. NYP*

24

*Holdings, Inc.*, No. 06 Civ. 11407 (BSJ), 2007 U.S. Dist. LEXIS 96228, 2007 WL 4820968, at *3

(S.D.N.Y. Sept. 18, 2007)). An analysis of the statements demonstrate the reports fall squarely

within Section 74's absolute privilege.

The May 15, 2019 *New York Law Journal* Article (AC ¶ 86)[13]

First, Plaintiff's defamation claim based upon this article was filed beyond the one year

statute of limitations and is time-barred. N.Y. C.P.L.R. § 215(3). Second, the statement is a direct

quote from the Lewis I Complaint parroted verbatim by the reporter:

> 5. Notwithstanding his enormous contributions, on October 12th, 2018, without
> any discussion or warning, Plaintiff was placed on immediate leave via email from
> Pierce and Beck. The purported basis was **demonstrably false allegations by
> a junior level employee who was used as a pawn by Pierce and Beck** and,
> whose allegations, appear to have been altered after they were allegedly reported
> in an ill-fated effort to give the lies credibility (the "False Allegations").[Footnote
> omitted].

(See Fernandez Decl. Exh. F (emphasis supplied)). This May 2019 statement is therefore subject

to the absolute litigation privilege.

The September 9, 2019 *New York Law Journal Article* (AC ¶ 86)[14]

Plaintiff also mischaracterizes this as a press statement, but again fails to provide the entire

quote from the *New York Law Journal* article which is the report lifted verbatim from the Lewis

Declaration in support of his motion for sanctions in the Los Angeles action:

> 24. Putney's own counsel has hinted that the report does not say what PB claims it
> says. <u>This is consistent with LaVigne's comments to me that the Putney report is
> inconclusive and that nobody at the firm believes the False Accuser.</u>

(See Fernandez Decl. Exh. D (emphasis supplied)). The Amended Complaint omits the

underscored language which is also a direct quote taken verbatim from a Lewis motion which

---

[13] https://www.law.com/newyorklawjournal/2019/05/15/pierce-bainbridge-ex-partner-trade-toxicallegations-of-extortion-misconduct-389-69033/ (load-date May 17, 2019) (Fernandez Decl. Exh. P).
[14] https://www.law.com/newyorklawjournal/2019/09/09/pierce-bainbridge-ex-partner-trade-barbsand-dismissal-bids/ (load dated Sept. 10, 2019) (Fernandez Decl. Exh Q).

Plaintiff's employer opposed *pro se* a year before this Complaint was filed.   This statement is absolutely protected by the litigation privilege.

The February 2, 2020 NBC News Article (AC ¶ 86)[15]

      Plaintiff again failed to provide the full quote from the NBC News article in her Amended Complaint:

> "I blew the whistle on financial misconduct, and Pierce Bainbridge immediately set out to destroy my life," he said. "The firm <u>exploited false allegations</u>, by a <u>staffer attempting to save her job</u>, to defame me nationwide and discredit my truthful allegations, which the firm has said: **'if true, would amount to criminal activity.'"**

(Fernandez Decl. Exh. R (emphasis supplied)).   This statement is also protected by the absolute litigation privilege as well as the fair and accurate report privilege.   Lewis summarized the Lewis I and Lewis II allegations in the article:

- "<u>Exploited false allegations</u>."  The Lewis I Complaint alleges Jane Doe's "False Allegations" (a defined term used throughout the Lewis II allegations, which the reporter also quoted directly from the Complaint) were made up or "exploited" (See Fernandez Decl. Exh. F,  ¶¶ 6, 184, 186).

- "<u>Staffer attempting to save her job</u>."  The Lewis-Doe Complaint alleges Jane Doe made "false allegations" in an effort to "establish job security." (Fernandez Decl. Exh I, ¶¶ 16, 75).

Lewis also quoted directly from the dismissed Pierce Bainbridge Los Angeles Complaint:

> The Defamatory Complaint includes numerous false and disparaging statements about the Firm and its partners, including allegations of unethical and dishonest business practices, some of which, **if true, would amount to criminal activity.**

(Fernandez Decl. Exh. D, ¶ 4 (emphasis supplied)).   The other portions of the alleged defamatory statement target Pierce Bainbridge, not Jane Doe, and are not actionable on their face.   It should

---

[15] https://www.nbcnews.com/news/us-news/law-firm-representingrudy-giuliani-beset-sordid-allegations-partner-exodus-n1127906  (last accessed May 17, 2021) (Fernandez Decl. Exh. R).

also be noted that, as the LAC states, it was the firm, not Lewis, who judicially conceded Lewis's

allegations of financial malfeasance, "if true, would amount to criminal activity."

The June 9, 2020 Law360 Article (AC ¶ 85)[16]

> Once again, Plaintiff did not provide Lewis's entire quote from the article which was:

> **Lewis has also sued the woman at Pierce Bainbridge's New York office who
> accused him of sexual assault, claiming she defamed him in an affidavit she
> wrote for Pierce Bainbridge in his lawsuits. Identified only as "Jane Doe," the
> woman also asked to have that suit dismissed on the basis of "absolute
> privilege" late last month.**

> With regards to **Doe**, he said he has 'very strong arguments against the privilege
> asserted' and is 'also exploring whether David Hecht, with whom Jane Doe has a
> close relationship, will face exposure for Jane Doe's dishonesty and defamation.'
> 'Jane Doe has lied,' he added. 'Period. Hard stop.'

(Fernandez Decl. Exh Q (emphasis supplied)).  Plaintiff's serial mischaracterizations of the press

reports are compounded by her intentional  substitution of "Doe" with "Kyle" without the requisite

bracketed reference.  (AC ¶ 85). Lewis maintained Jane Doe's anonymity until she revealed it in

this action which was filed two months <u>after</u> the Law360 article.   Lewis also summarized the

allegations of the Lewis-Doe Defamation Complaint which states: "Jane Doe has not been truthful

and generally lacks credibility."  (Fernandez Decl. Exh. I ¶ 9).  Thus, the statement is absolutely

protected by Section 74.

The August 6, 2020 *ABA Journal* Article (AC ¶ 88) [17]

The *ABA Journal* reporter characterized the Kyle action as ". . . the center of a flurry of

litigation between Lewis and Pierce Bainbridge," and provided a link to a May 21, 2019 article

---

[16] https://www.law360.com/employment/articles/1280807/ex-partner-wants-sanctions-in-
piercebainbridge-fraud-fight\ (last accessed May 17, 2021) (Fernandez Decl. Exh. R).
[17] Debra Cassens Weiss, Former Pierce Bainbridge Paralegal Sues Firm and Ex-Partner Over Alleged Sex
Assault, ABA Journal, https://www.abajournal.com/news/article/former pierce-bainbridge-paralegal-sues-
firm-fired-partner-for-alleged-harassment (dated August 6, 2020) (last accessed May 17, 2021) (Fernandez
Decl. Exh. T).

about the "dueling suits" between Lewis in New York and Pierce Bainbridge in Los Angeles.

Asked for a comment about the Kyle lawsuit, Lewis responded:

> "The allegations are a complete fabrication, abject lies. This disgraceful and racist weaponization of #MeToo undermines real victims and detracts from a serious cause," said Lewis, who is Black, in an email.

> Kyle is now employed at Hecht Partners, he said.

> "I've strong reason to believe the false accuser has been weaponized and used by both law firms … to deflect from my exposure of extremely troubling issues," Lewis said. "I look forward to a public airing of the issues and clearing my name."

(Fernandez Decl. Exh. T).  These statements are privileged  because they are entirely consistent with the allegations in the Lewis Complaints.

Therefore, Plaintiff's defamation claims should be dismissed in their entirety.

## **CONCLUSION**

For all the foregoing reasons, Defendant respectfully requests that the Court enter an Order granting the Motion to Dismiss the Amended Complaint in its entirety, and grant such other and further relief as this Court deems just and proper.

Dated:  May 18, 2021

Respectfully submitted,

FERNANDEZ GARCIA, LLC

By: _____
Juan C. Fernandez, Esq.

14 Elm Street
Morristown, NJ  07960
Telephone:     (973) 500-2256
Facsimile:      (973) 298-5737
juan@fernandezgarcialaw.com
Attorneys for Defendant Donald Lewis

29