**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------ X

SELINA KYLE,                                 :
                                                   :
                  Plaintiff,           :
                                                       :
             v.                        :        Civil Action No.: 20-cv-06142 (KPF)
                                                     :
DONALD D. LEWIS, in his individual and professional   :
capacities, and PIERCE BAINBRIDGE BECK PRICE &   :
HECHT LLP,                                     :
                                                     :
                  Defendants.        :

------------------------------------------------------------------------ X

# PLAINTIFF SELINA KYLE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DONALD D. LEWIS'S MOTION TO DISMISS THE AMENDED COMPLAINT

**WIGDOR LLP**

Lawrence M. Pearson, Esq.
Lindsay M. Goldbrum, Esq.

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800

*Counsel for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv

PRELIMINARY STATEMENT ..........................................................................1

FACTS ................................................................................................................2

ARGUMENT ......................................................................................................9

    I.      LEGAL STANDARD..............................................................................9

    II.     PLAINTIFF'S DEFAMATION AND DEFMATION *PER SE* CLAIMS ARE
          ACTIONABLE .........................................................................................9

          A.     Plaintiff States a Claim for Defamation *Per Se* .........................10

          B.     Defendant's Statements Were Not Opinions .............................11

    III.    DEFENDANTS LEWSIS'S STATEMENTS ARE NOT PRIVILEGED
          UNDER NEW YORK CIVIL RIGHTS LAW § 74 ...............................12

          A.     Defendant Lewis's Statements Are Not "Reports" of Judicial
                Proceedings Protected by Civil Rights Law § 74 .......................13

          B.     Defendant Lewis's Statements Are Not 'Fair and Accurate' Reports ........15

          C.     Civil Rights Law § 74 Does Not Apply When Proceedings are
                Designed to Defame ..................................................................17

    IV.    PLAINTIFF'S NYSHRL CLAIMS OF DISCRIMINATION AND
          RETALIATION ARE TIMELY .............................................................20

    V.     SEXUAL HARASSMENT AND ASSAULT ARE A FORM OF SEX
          DISCRIMINATION UNDER NYSHRL .............................................21

    VI.    DEFENDANT LEWIS'S HARASSMENT, POST-EMPLOYMENT
          RETALIATION, AND OTHER CONDUCT IS ACTIONABLE
          RETALIATION .....................................................................................23

    VII.    DEFENDANT LEWIS, A PARTNER, WAS PLAINTIFF'S SUPERVISOR .....25

    VIII.   DEFENDANT LEWIS IS INDIVIDUALLY LIABLE FOR HIS OWN
          CONDUCT ............................................................................................26

IX.    DEFENDANT LEWIS'S STATEMENTS ARE NOT CONFIDENTIAL UNDER F.R.E. § 408 ............................................................................................28

X.    THE COURT SHOULD DISREGARD EXTRINSIC DOCUMENTS SUBMITTED BY DEFENDANT LEWIS............................................................30

XI.    PLAINTIFF'S DEFAMATION CLAIMS ARE NOT TIME-BARRED..............30

CONCLUSION.....................................................................................................................30

## **TABLE OF AUTHORITIES**

### **Cases**

*Ahmad v. New York City Health & Hosps. Corp.*,
  No. 20 Civ. 675 (PAE), 2021 WL 1225875 (S.D.N.Y. Mar. 31, 2021) .................................. 27

*Alfano v. Costello*,
  294 F.3d 365 (2d Cir. 2002).................................................................................................. 22

*Allen v. CH Energy Grp., Inc.*,
  872 N.Y.S.2d 237 (3d Dept. 2009) ...................................................................................... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................ 9

*Beards v. BronxCare Health Sys.*,
  No. 18 Civ. 12216 (PAE), 2021 WL 704177 (S.D.N.Y. Feb. 23, 2021).............................. 27

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007)................................................................................................................ 9

*Biro v. Conde Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012).................................................................................. 16

*Burlington Indus., Ind. v. Ellerth*,
  524 U.S. 742 (1988).............................................................................................................. 26

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006)................................................................................................................ 23

*Carney v. Am. Univ.*,
  151 F.3d 1090 (D.C.Cir.1998) ............................................................................................. 29

*Carr v. Health Ins. Plan of Greater New York, Inc.*,
  No. 99 Civ. 3706 (NRB), 2001 WL 563722 ....................................................................... 29

*Celle v. Filipino Rep. Enterprises Inc.*,
  209 F.3d 163 (2d Cir. 2000)................................................................................................... 9

*Chamblee v. Harris & Harris, Inc.*,
  154 F.Supp.2d 670 (S.D.N.Y.2001)..................................................................................... 26

*Clark v. Schuylerville Cent. Sch. Dist.*,
  807 N.Y.S.2d 175 (3d Dept. 2005) ...................................................................................... 11

*Daniel Goldreyer, Ltd. v. Van de Wetering*,
   217 A.D.2d 434 (1995) ........................................................................... 15

*Davis v. Boeheim*,
   24 N.Y.3d 262 (2014) ............................................................................. 12

*Dodd v. City Univ. of New York*,
   489 F. Supp. 3d 219 (S.D.N.Y. 2020) .................................................... 26

*Edwards v. Nat'l Audubon Soc., Inc.*,
   556 F.2d 113 (2d Cir. 1977) ................................................................... 10

*Eisenberg v. Univ. of New Mexico.*,
   936 F.2d 1131 (10th Cir.1991) ............................................................... 29

*Elias v. Rolling Stone LLC*,
   872 F.3d 97 (2d Cir. 2017) ..................................................................... 10

*Feingold v. New York*,
   366 F.3d 138 (2d Cir. 2004) ................................................................... 26

*Fine v. ESPN, Inc.*,
   11 F. Supp. 3d 209 (N.D.N.Y. 2014) ................................................ 13, 14

*Fitchett v. City of New York*,
   No. 18 Civ. 8144 (PAE), 2021 WL 964972 (S.D.N.Y. Mar. 15, 2021) ................................... 27

*Flomenhaft v. Finkelstein*,
   127 A.D.3d 634 (1st Dep't 2015) ............................................................ 20

*GeigTech E. Bay LLC v. Lutron Elecs. Co.*,
   No. 18 Civ. 5290 (CM), 2019 WL 1768965 (S.D.N.Y. Apr. 4, 2019) ..................................... 17

*George v. Pro. Disposables Int'l, Inc.*,
   221 F. Supp. 3d 428 (S.D.N.Y. 2016) .................................................... 20

*Goldman v. Barrett*,
   No. 15 Civ. 9223 (PGG), 2016 WL 5942529 (S.D.N.Y. Aug. 24, 2016) ................................. 30

*Gorman v. Covidien, LLC*,
   146 F. Supp. 3d 509 (S.D.N.Y. 2015) .................................................... 27

*Grauer v. UBS Fin. Servs., Inc.*,
   No. 07 Civ. 5450 (LAP), 2008 WL 11398936 (S.D.N.Y. Dec. 17, 2008) ......................... 24, 25

v

*Greenberg v. Spitzer*,
    155 A.D. 3d 27 (2d Dep't 2017) ................................................................. 13, 19

*Halcyon Jets, Inc. v. Jet One Grp., Inc.*,
    69 A.D.3d, 534- (2010) ............................................................................. 18, 20

*Hicks v. IBM*,
    44 F. Supp. 2d 593 (S.D.N.Y. 1999) ................................................................ 27

*Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*,
    49 N.Y.2d 63 (1979) ........................................................................................ 15

*Karedes v. Ackerley Grp., Inc.*,
    423 F.3d 107 (2d Cir. 2005) ...................................................................... 15, 16

*Kavanagh v. Zwilling*,
    997 F. Supp. 2d 241 (S.D.N.Y. 2014) .............................................................. 10

*Keogh v. New York Herald Trib., Inc.*,
    51 Misc. 2d 888, 274 N.Y.S.2d 302 (Sup. Ct. 1966) ................................... 13, 14

*Koerner v. State of New York*,
    62 N.Y.2d 442 (1984) ...................................................................................... 20

*Langella v. Mahopac Cent. Sch. Dist.*,
    No. 18 Civ. 10023 (NSR), 2020 WL 2836760 (S.D.N.Y. May 31, 2020) ............. 20

*Leary v. Al-Mubaraki*,
    No. 18 Civ. 0048 (LTS) (HBP), 2019 WL 4805849 (S.D.N.Y. Sept. 30, 2019) ..................... 24

*Lewis v. Triborough Bridge and Tunnel Auth.*,
    No. 97 Civ. 0607, 2001 WL 46986 (S.D.N.Y.2001) ............................................ 27

*Lopes v. Caffe Centrale LLC*,
    548 F. Supp. 2d 47 (S.D.N.Y. 2008) ................................................................ 26

*Maher v. All. Mortg. Banking Corp.*,
    650 F. Supp. 2d 249 (E.D.N.Y. 2009) .......................................................... 27, 28

*Malena v. Victoria's Secret Direct, LLC*,
    886 F. Supp. 2d 349 (S.D.N.Y. 2012) .......................................................... 26, 27

*Master–Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*,
    739 F.Supp.2d 125 (D.Conn. 2010) ................................................................. 29

*McHenry v. Fox News Network, LLC*,
　No. 19 Civ. 11294 (PAE), 2020 WL 7480622 (S.D.N.Y. Dec. 18, 2020) ........................ 21, 23

*McNally v. Yarnall*,
　764 F. Supp. 853 (S.D.N.Y.1991).......................................................................................... 17

*Meritor Sav. Bank, FSB v. Vinson*,
　477 U.S. 57 (1986)............................................................................................................ 21, 22

*Messer v. Fahnestock & Co. Inc.*,
　No. 03 Civ. 4989 (ENV) (JMA), 2008 WL 4934608 (E.D.N.Y. Nov. 18, 2008) ................... 26

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
　715 F.3d 102 (2d Cir. 2013).............................................................................................. 22, 23

*Morelli v. Wey*
　No. 153011/16, 2016 WL 7386549 (N.Y. Sup. Ct. Dec. 16, 2016) ........................................ 14

*Mudholkar v. Univ. of Rochester*,
　261 F. App'x 320 (2d Cir. 2008)............................................................................................. 21

*Nolan v. State*,
　158 A.D.3d 186 (1st Dept. 2018)...................................................................................... 10, 11

*NorGuard Ins. Co. v. Lopez*,
　No. 15 Civ. 5032 (DRH)(AYS), 2017 WL 354209 (E.D.N.Y. Jan. 24, 2017)........................ 30

*Ocean State Seafood, Inc. v. Cap. Newspaper, Div, of Hearst Corp.*,
　112 A.D.2d 662 (3d Dep't 1985) ............................................................................................ 14

*Officemax Inc. v. Cinotti*,
　966 F. Supp. 2d 74 (E.D.N.Y. 2013) ..................................................................................... 18

*Pace v. Paris Maint. Co.*,
　7 F. App'x. 94 (2d Cir.2001) .................................................................................................. 29

*Patane v. Clark*,
　508 F.3d 106 (2d Cir. 2007)................................................................................................... 21

*Patrick v. G2 FMV, LLC*,
　Index No. 152318/2015, 2016 WL 320622 (N.Y. Sup. Ct. Jan. 27, 2016) ............................ 20

*Patrowich v. Chem. Bank*,
　63 N.Y.2d 541 (N.Y.1984) ..................................................................................................... 26

*Pisani v. Staten Island Univ. Hosp.*,
    440 F. Supp. 2d 168 (E.D.N.Y. 2006) ................................................................ 16

*Rabiea v. Stein*,
    69 A.D.3d 700 (2d Dep't 2010) ......................................................................... 18

*Redd v. New York Div. of Parole*,
    678 F.3d 166 (2d Cir. 2012) ......................................................................... 21, 22

*Resol. Tr. Corp. v. Blasdell,*
    154 F.R.D. 675 (D.Ariz.1993) .......................................................................... 29

*Reszka v. Collins*,
    136 A.D.3d 1299, (4th Dep't 2016) ................................................................... 18

*Rodriguez v. Nat'l Golf Links of Am.*,
    No. 19 Civ. 7052 (PKC) (RML), 2020 WL 3051559 (E.D.N.Y. Jun. 8, 2020) ...................... 24

*Rosenberg v. MetLife, Inc.*,
    8 N.Y.3d 359 (2007) ...................................................................................... 19

*Saleh v. New York Post*,
    78 A.D.3d 1149, 915 N.Y.S.2d 571 (2010) .......................................................... 13

*Salvatore v. KLM Royal Dutch Airlines*,
    No. 98 Civ. 2450 (LAP), 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999) ............................. 27

*Santi v. Hot In Here, Inc.*,
    No. 18 Civ. 03028 (ER), 2019 WL 290145 (S.D.N.Y. Jan. 22, 2019) .............................. 24

*Schaper v. Bronx Lebanon Hosp. Ctr.*,
    408 F. Supp. 3d 379 (S.D.N.Y. 2019) .............................................................. 26, 27

*Sherman v. Fivesky, Inc.*
    19 Civ. 8015 (LJL), 2020 WL 5105164 (S.D.N.Y. Aug. 31, 2020) ................................. 24

*Sotomayor v. City of New York*,
    862 F. Supp. 2d 226 (E.D.N.Y. 2012) ................................................................. 20

*Sprewell v. NYP Holdings, Inc.*,
    772 N.Y.S.2d 188 (Sup. Ct. 2003) ..................................................................... 10

*Sullivan v. Am. Airlines, Inc.*,
    80 A.D.3d 600 (2011) .................................................................................... 19

*Summa v. Hofstra Univ.*,
   708 F.3d 115 (2d Cir. 2013)................................................................ 21

*Terry v. Ashcroft*,
   336 F.3d 128 (2d Cir. 2003)......................................................... 22, 23

*Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*,
   603 F. Supp. 2d 584 (S.D.N.Y. 2009)................................................ 15

*Tomka v. Seiler Corp.*,
   66 F.3d 1295 (2d Cir. 1995)............................................................... 26

*Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*,
   971 F. Supp. 2d 368 (S.D.N.Y. 2013)................................................ 30

*Torres v. Pisano*,
   116 F.3d 625 (2d Cir. 1997)............................................................... 22

*Townsend v. Benjamin Enterprises, Inc.*,
   679 F.3d 41 (2d Cir.2012)............................................................. 25, 26

*Training Unlimited, Inc. v. Nat'l Broad. Co., Inc.*,
   868 F. Supp. 501 (E.D.N.Y. 1994) ............................................... 13, 14

*Uforma/Shelby Bus. Forms, Inc. v. NLRB*,
   111 F.3d 1284 (6th Cir. 1997) ...................................................... 28, 29

*Urico v. Parnell Oil Co.*,
   708 F.2d 852 (1st Cir.1983)............................................................... 29

*Vinas v. Chubb Corp.*,
   499 F. Supp. 2d 427 (S.D.N.Y. 2007).................................................. 9

*Volpe v. Paniccioli*,
   57 Misc. 3d 1219(A), 72 N.Y.S.3d 519 (N.Y. Sup. Ct. 2017) ......... 18, 20

*Wenz v. Becker*,
   948 F. Supp. 319 (S.D.N.Y. 1996)...................................................... 14

*Wexler v. Allegion (UK) Ltd.*,
   374 F. Supp. 3d (S.D.N.Y. 2019)......................................... 13, 14, 15

*Whidbee v. Garzarelli Food Specialties, Inc.*,
   223 F.3d 62 (2d Cir. 2000).................................................................. 22

*Wilk v. VIP Health Care Servs., Inc.*,
   No. 10 Civ. 5530 (ILG) (JMA), 2012 WL 560738 (E.D.N.Y. Feb. 21, 2012) ....................... 26

*Williams v. N.Y.C. Hous. Auth.*,
   61 A.D.3d 62 (1st Dep't 2009) .......................................................................................... 23

*Williams v. Regus Mgmt. Grp., LLC*,
   No. 10 Civ. 8987, 2012 WL 1890384 (S.D.N.Y. May 15, 2012) ........................................... 29

*Williams v. Williams*,
   23 N.Y.2d 592 (1969) ............................................................................................... 17, 18

*Willson v. Ass'n of Graduates of the U.S. Mil.,*
   *Acad.*, 946 F. Supp. 294 (S.D.N.Y. 1996) ........................................................................... 17

*Zarda v. Altitude Express, Inc.*,
   883 F.3d 100 (2d Cir. 2018) .............................................................................................. 22

*Zervos v. Trump*,
   171 A.D.3d 110, (1st Dep't 2019) ...................................................................................... 10

*Zurich Am. Life Ins. Co. v. Nagel*,
   No. 20 Civ. 11091 (JSR), 2021 WL 1877364 (S.D.N.Y. May 11, 2021) ........................... 28, 29

## Other Authorities

N.Y.C. Admin. Code § 8–502(d) ............................................................................................ 20

N.Y. Exec. Law § 296(1) ........................................................................................... 26, 27, 28

N.Y. Exec. Law § 297 ........................................................................................................... 21

N.Y. Civil Rights Law § 74 ............................................................................................. passim

N.Y. C.P.L.R. 214(2) ............................................................................................................ 20

N.Y. C.P.L.R. 321 ................................................................................................................ 19

Plaintiff Selina Kyle ("Plaintiff" or "Ms. Kyle") respectfully submits this memorandum of law in opposition to Defendant Donald D. Lewis's ("Defendant Lewis," "Defendant" or "Mr. Lewis") Motion to Dismiss the Amended Complaint (the "Motion"). For the reasons set forth below, Defendant Lewis's Motion should be denied in its entirety.

## PRELIMINARY STATEMENT

Defendant Lewis's campaign to punish Ms. Kyle for coming forward with the truth about the sexual assault and harassment she suffered at his hands has been relentless. Ms. Kyle endured years of mudslinging and name-calling but stayed in the background to protect her identity. At one point, when Defendant Lewis threatened to expose her identity over the course of his litigation with Pierce Bainbridge Beck Price & Hecht LLP ("Pierce Bainbridge" or the "Firm"), she decided to file a motion to keep her name under seal and attached an affidavit that gave her account of the July 2018 assault by Mr. Lewis in support of that motion. Defendant Lewis, as he admits in his Motion to Dismiss papers here, retaliated against Ms. Kyle by filing a frivolous lawsuit against her in order to further defame, harass, and intimidate Ms. Kyle. Indeed, the condition Mr. Lewis set for him to withdraw his lawsuit against her was that Ms. Kyle entirely (and falsely) recant her account of the assault—drawing a direct connection between his retaliatory lawsuit and Ms. Kyle's legally protected activity in reporting his sexual misconduct.

The pressure and threats being brought to bear by Mr. Lewis were becoming unbearable, and, in August 2020, Ms. Kyle finally filed her own legal claims against Mr. Lewis and Pierce Bainbridge to assert her own rights, confront her tormentor, and perhaps find a way to extricate herself from Defendants' litigation and to stop being a football in their game. Plaintiff's Amended Complaint includes factual allegations supporting all the applicable claims. Defendant Lewis, as a partner (even if non-equity) and a senior attorney at the firm, unquestionably was a

supervisor to Ms. Kyle, a paralegal he worked with, and his nonconsensual sexual touching and conduct, as well as his retaliatory acts (including his lawsuit against Ms. Kyle), all directly violated the laws at issue here.

Defendant Donald Lewis's Motion exemplifies the approach of "throw everything at the wall and see what sticks." Defendant Lewis again wastes everyone's time with irrelevant and unsupported conspiracy theories that do nothing to advance any legal argument. In addition, several of the legal theories he does offer are based on caselaw that is inapplicable or lacks a basis in authority altogether. His erroneous assertions regarding a supposed one-year statute of limitations (rather than the true three-year period) under the New York State Human Rights Law ("NYSHRL") is only the starkest example (never mind that the New York City Human Rights Law ("NYCHRL") would continue to apply). It is perhaps unsurprising that Defendant Lewis is unaware of the fact that sexual harassment has long been recognized as a form of discrimination under New York law. His assertion that a paralegal such as Ms. Kyle can have only one "supervisor" at a time also is factually and legally specious. Furthermore, Defendant Lewis clearly (and even admittedly) launching his litigation against Ms. Kyle for the purpose of responding to her factual testimony about his misconduct is the very definition of retaliation and harassment. Therefore, the litigation-related privileges should not and do not apply to his improperly motivated actions. The Motion should be denied.

## FACTS[1]

In June 2018, Pierce Bainbridge hired Plaintiff as a Legal Assistant. ¶ 20. In Plaintiff's first few weeks at Pierce Bainbridge, Defendant Lewis, a Partner at the Firm, paid particular attention to her work, pulling her onto multiple assignments, including organizing his contact

---

[1]     "¶ __" citations refer to the paragraphs of the Amended Complaint, Dkt. No. 50.

list.  ¶ 21.  On July 7, 2018, Plaintiff went to the Pierce Bainbridge office in New York in order to clean and catch up on some work during the weekend.  ¶ 23.

That same day, Defendant Lewis sent a message to Plaintiff asking if she could let him into the office, which she did.  ¶ 24.  Later that day, when Ms. Kyle passed the office where Defendant Lewis was working in order to get a document from the printer, she noticed through the open door that Defendant Lewis had a hazy look on his face and smiled at her.  ¶ 29.  Ms. Kyle also saw Defendant Lewis's hand moving underneath the desk.  *Id.*  At that moment, Defendant Lewis locked eyes with her and stood up, revealing that his pants were partially pulled down, exposing his boxers and that his penis was erect.  ¶ 30.  Defendant Lewis was rubbing his erect penis over his boxers with his hand.  *Id.*  Ms. Kyle stood frozen in shock and fear.  *Id.* Defendant Lewis approached her, mumbling words with his pants still partially down.  ¶ 31.  She detected that Defendant Lewis smelled of alcohol.  *Id.*  Once Defendant Lewis reached Ms. Kyle, who was panicked, he grabbed her left breast and began to rub her breast as he continued with his other hand to rub his erect penis over his boxers.  ¶ 32.  She started saying "Stop" and "No," but was still frozen with fear.  ¶ 33.  This conduct by Mr. Lewis obviously was expressly sexual and targeted Ms. Kyle based upon her female gender.

Ms. Kyle then pulled away from Defendant Lewis and ran into the bathroom.  *Id.*  She suffered a panic attack in the bathroom, began hyperventilating, and cried for approximately 15 to 30 minutes.  *Id.*  When Ms. Kyle left bathroom to get out of the office, Defendant Lewis told her, "If you tell anyone what happened, you are gone.  I was friends with [John Pierce] at Harvard, and if you tell anyone you are finished."  ¶ 35-36.  She fled the office.  ¶ 36.

Defendant Lewis quickly moved to try to discredit Ms. Kyle among the attorneys and her peers by complaining openly about her work, although these complaints were unwarranted.  ¶ 37.

In early October 2018, Ms. Kyle learned that Mr. Lewis was going to be promoted to the position of Assigning Partner. ¶ 57. She made the decision to come forward about what had happened because she did not want any other woman to go through what she had. ¶ 60.

On October 4, 2018, Ms. Kyle called Grace Chang, the Supervising Managing Paralegal, and recounted the details of the July 7, 2018 incident to Ms. Chang, who told her that she needed to report the incident to Carolynn Beck ("Ms. Beck"). ¶ 61. That same night, Ms. Kyle called Ms. Beck and gave her a detailed account of the incident with Defendant Lewis. ¶ 62. Plaintiff was also interviewed by outside attorneys from Putney Twombley Hall & Hirson ("Putney Twombley"). ¶ 65. Plaintiff again recounted Defendant Lewis's assault on her and filled out a complaint form. ¶ 66. On December 4, 2018, Plaintiff received an email from Ms. Beck stating that Defendant Lewis had been let go. ¶ 67. The email to Plaintiff stated that, as a result of the investigation by Putney Twombley, the Firm had made findings that:

> The weight of the evidence supports your allegations that you endured sexual harassment and the threat of retaliation by Defendant Lewis on July 7, 2018. The weight of the evidence is inconclusive concerning whether your allegation about Defendant Lewis' conduct on July 20, 2018, rose to the level of sexual harassment. The evidence does demonstrate, however, that Defendant Lewis exercised poor judgment by crossing personal and professional boundaries. The weight of the evidence supports a finding that Defendant Lewis had a retaliatory motive with respect to your employment status and performance.

¶ 69. This email also said that, while Mr. Lewis had been terminated, it was not because of his conduct toward Plaintiff, but because of "his conduct during the investigation and in violation of the terms of his administrative leave and prior to the close of the investigation." ¶ 70.

The trauma of Defendant Lewis's assault and the stress of the investigation was soon followed by further indignities and impositions upon Plaintiff. On May 16, 2019, Defendant Lewis filed a lawsuit against Pierce Bainbridge, all Partners at Pierce Bainbridge, Putney

Twombley and one of its attorneys, and even Mr. Pierce's assistant.  ¶ 72.  Defendant Lewis, though he used the pseudonym Jane Doe in his complaint, provided enough details about Plaintiff that anyone familiar with the Firm's personnel would be able to identify her.  ¶ 74. Defendant Lewis continued his retaliatory, bullying denigration of Plaintiff, stating falsely that she "was accused of 'lying' by more than one firm personnel in connection with excuses made about not completing the assignments she disliked, including two individuals who did so on October 3, the day before the False Allegations."  ¶ 76.  Defendant Lewis also made the assertion that there was a "plethora of negative feedback about Doe at the firm."  *Id.*  This was false and a transparent effort to harm Plaintiff's reputation and intimidate her, as she had survived multiple reductions-in-force, showing her value to the Firm.  ¶ 77.  Her employment with Pierce Bainbridge ended in early July 2020, with the closing of the Firm's New York office.  *Id.*

On July 26, 2019, Defendant Lewis filed an Amended Complaint, in which he added Plaintiff, a previously unnamed sexual assault victim, to the pleadings as a "discovery defendant."  ¶ 79.  Inexcusably, Defendant Lewis also used the Amended Complaint as a means to threaten Plaintiff and intrude upon her personal life.  ¶ 81.  To that end, the Amended Complaint stated that Defendant Lewis "intends to seek discovery from the False Accuser [his theatrical moniker for Ms. Kyle] including without limitation: (i) the purported 'unlicensed arranged marriage' (LAC ¶ 25); (ii) the origins and nature of her relationship with David Hecht; (iii) the False Accuser's deleted Twitter, deleted Facebook, deleted Quora and deleted Couchsurfing.com accounts, all of which deletions were done after the investigation started and constitute spoliation."  ¶ 82.  This, too, was open and transparent intimidation and retaliation.

In fact, Ms. Kyle had legally changed her name years before the relevant events here in order to protect her identity and escape an abusive arranged marriage.  ¶ 83.  Defendant Lewis

has used that information to threaten and pressure her.  *Id.*  Mr. Lewis's threats, which have no

place in a court submission, were designed to scare Plaintiff and discourage her from taking any

legal action or from testifying against him.  ¶ 84.  Outrageously, Mr. Lewis continued to use such

retaliatory, unlawful, and dangerous tactics in the instant action regarding Plaintiff's personal

information.  As stated in our Letter Motion to Seal dated September 25, 2020, Defendant

Lewis's knowingly inappropriate use of **Plaintiff's birth name** in his Motion to Disqualify was

improper and just his latest attempt to harass, terrify, and threaten Plaintiff.  *See* Dkt. No. 16.

On January 27, 2020, Defendant Lewis continued his harassment of and offensive against

Plaintiff by filing a retaliatory lawsuit against her in New York State Supreme Court.  ¶ 91.

Defendant Lewis and his attorneys filed defamation claims against a sexual assault victim (at a

minimum, against an accuser who deserves to be heard and treated with dignity and respect for

her legal rights, not met with retaliation in the form of legally baseless claims) and dragged her

into the quagmire of his fight with Pierce Bainbridge.  ¶ 92.  Again, the purpose of this lawsuit

was to punish and intimidate a witness who raised sincere allegations, in an apparent attempt to

force her silence.  ¶ 92.  The January 27, 2020 Lewis complaint against Ms. Kyle is full of

unsupported accusations, speculation, and vague, bellicose character assassination without any

evidence cited.  ¶ 93; *see* Dkt. No. 14.

In his brief in support of the instant motion (Dkt. No. 68), Defendant Lewis admits that

this lawsuit against Plaintiff was retaliatory, stating more than once that the lawsuit against Ms.

Kyle was "for" or in response to her affidavit regarding Mr. Lewis's improper sexual conduct in

July 2018.  Dkt. No. 68 at p. 9, 13, 17, 18, 20, 22, and 28.

Statements in Mr. Lewis's January 27, 2020 complaint that are worthy of a motion to

strike and demonstrate the malice and harassing motives behind it include: "Jane Doe has not

been truthful and generally lacks credibility," as well as assertions that she was surreptitiously reading Mr. Pierce's emails (she was not doing this, although she did have authorization and proper, work-related access to do so), and the assertion that Plaintiff "panicked and tried to create security by lodging the false allegations." ¶ 93.  In addition to all of this, Mr. Lewis's complaint against Ms. Kyle makes strange assertions and suppositions about Plaintiff with no apparent basis, such as stating that "it appears that Jane Doe, incorrectly believing the statute of limitations for defamation had lapsed, came forward with an entirely new and independent defamatory publication to demonize Lewis, attempt to give credence to her own falsehoods and help out her employer Pierce Bainbridge." ¶ 94.  This confusing assertion is not only false, but Mr. Lewis has no means of knowing Plaintiff's state of mind, and yet he gratuitously (and, at this point, habitually) included it in his pleading as just one more bit of character assassination.  ¶ 95.

When Plaintiff's counsel in the Lewis/Pierce Bainbridge litigation reached out to Defendant Lewis's counsel in early 2020 to request that Mr. Lewis withdraw his lawsuit against Plaintiff, Defendant Lewis's counsel demanded that Plaintiff perjure herself by recanting her allegations and instead say that she supposedly had been put up to everything by Mr. Pierce (*i.e.*, Defendant wanted Plaintiff to swear to a completely false version of events).  ¶ 96.  Defendant Lewis, therefore, has shown no hesitation to attempt to scare Plaintiff into silence and/or to surrender so that she might instead put forth a false story or otherwise benefit him.  ¶ 97.  This drew a direct connection between the retaliatory lawsuit and Plaintiff's reports and testimony regarding Mr. Lewis's discriminatory sexually harassing conduct—if she recanted, the lawsuit supposedly would be withdrawn.

In addition, Defendant Lewis has gone beyond the bounds of the legal pleadings in the various actions to defame Plaintiff in the media and online at various times in the past two years.

¶¶ 85-90.  Defendant Lewis has made many defamatory statements, including on June 9, 2020 in an article from *Law360*:

> With regards to Kyle, he said he has "very strong arguments against the privilege asserted" and is "also exploring whether David Hecht, with whom Jane Doe has a close relationship, will face exposure for Jane Doe's dishonesty and defamation." "Jane Doe has lied," he added. "Period. Hard stop."

¶ 85.  Other statements published in the press include:

- On February 2, 2020, an article in *NBC News* quoted Defendant Lewis stating, "The firm exploited false allegations, by a staffer attempting to save her job, to defame me nationwide and discredit my truthful allegations, which the firm has said: 'if true, would amount to criminal activity.'"  ¶ 86.

- On September 9, 2019, an article in the *New York Law Journal* quoted Lewis stating, "This is consistent with [LaVigne's] comments to me that the Putney report is inconclusive and that nobody at the Firm believes the false accuser."  ¶ 86.

Upon information and belief, Mr. Lewis was also responsible for a slew of articles published on legal blogs, including *LawFuel*, as well as in African-American-focused publications, such as *BlackNews.com*, as Mr. Lewis attempted to generate outrage in his favor while conspicuously omitting the fact that his victim, Plaintiff, is a woman of color.  ¶ 87.  By way of example only, in the *ABA Journal* on August 6, 2020, Mr. Lewis stated, "The allegations are a complete fabrication, abject lies. This disgraceful and racist weaponization of #MeToo undermines real victims and detracts from a serious cause."  ¶ 88.  Upon information and belief, several of these articles were ghostwritten by Mr. Lewis himself, as evidenced by the use of the press contact email "LewisPress2215@gmail.com."  ¶ 89.

After the filing of the instant action by Plaintiff against Defendants, Defendant Lewis filed a Motion to Disqualify Plaintiff's counsel.  *See* Dkt. 13-15.  Upon the denial of this motion on November 12, 2020, an article about the ruling was posted in *Law360*.  ¶ 99.  In this article,

Defendant Lewis is quoted as stating to the author: "Jane Doe, a liar, has worked at both law firms." ¶ 100. This too was blatant defamation. Defendant Lewis's discriminatory, retaliatory, and defamatory conduct is fully actionable, and Ms. Kyle must be permitted to proceed with her well-founded claims in order to stop his hateful, unlawful behavior.

<u>**ARGUMENT**</u>

## I. <u>LEGAL STANDARD</u>

When deciding a motion to dismiss, the court should consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To meet this pleading standard, a plaintiff merely must provide enough factual support that, if true, would "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## II. **PLAINTIFF'S DEFAMATION AND DEFAMATION *PER SE* CLAIMS ARE ACTIONABLE**

To state a claim for defamation, the plaintiff must allege "(1) a false and defamatory statement of fact; (2) regarding the plaintiff; (3) published to a third party by defendants; and, (4) resulting in injury to the plaintiff." *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 435 (S.D.N.Y. 2007) (citations omitted). Where a statement is defamatory *per se*, the plaintiff need not "plead[] and pro[ve] special damages." *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 179 (2d Cir. 2000). "If a statement is defamatory per se, injury is assumed." *Id.* In contrast, a statement is defamatory *per quod* if it results in actual damages and "the false statement is contained ***not in***

*the statement's literal wording but rather its innuendo*." *Kavanagh v. Zwilling*, 997 F. Supp.

2d 241, 248 (S.D.N.Y. 2014) (emphasis added).

### A.   Plaintiff States a Claim for Defamation *Per Se*

A statement is defamatory *per se* if it falls into one of the following three categories: "(1)

statements charging the plaintiff with a serious crime; (2) statements that tend to injure the

plaintiff in her trade, business or profession; [or] (3) statements that impute to the plaintiff a

'loathsome disease.'" *Nolan v. State*, 158 A.D.3d 186, 195 (1st Dept. 2018).  With respect to the

second category, a plaintiff must demonstrate that the statements at issue "reflect on [her]

performance or [are] incompatible with the proper conduct of [her] business." *Sprewell v. NYP

Holdings, Inc.*, 772 N.Y.S.2d 188, 195 (Sup. Ct. 2003).  Moreover, when analyzing whether

statements constitute defamation, a court must look at the statements *in total* and *in context*.  *See

Elias v. Rolling Stone LLC*, 872 F.3d 97, 109 (2d Cir. 2017) ("The District Court erred by

evaluating the Article's various allegations . . . in isolation, rather than considering them in the

context of the article as a whole").  When viewed in total and in context, there is no question that

Defendant Lewis's statements, taken together, constitute defamation *per se*.  *See*, *e.g.*, *Edwards

v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) ("[T]o call the appellees, all of

whom were university professors, paid liars clearly involves defamation that far exceeds the

bounds of the prior controversy."); *Zervos v. Trump*, 171 A.D.3d 110, 129, (1st Dep't 2019),

appeal dismissed, 36 N.Y.3d 1083 (2021)("[D]efendant's flat-out denial of a provable, specific

allegation against him concerning his own conduct, accompanied by a claim that the accuser was

lying, could not be viewed even in that context as a rhetorical statement of pure opinion or as

'vague, subjective, and lacking in precise meaning.'"); *Allen v. CH Energy Grp., Inc.*, 872

N.Y.S.2d 237, 239 (3d Dept. 2009) (finding that a statement defamed the plaintiff's business

reputation where "a person who engaged in the conduct described by [the defendant] would not be qualified to continue in [the plaintiff's] position"); *Nolan*, 158 A.D.3d at 195 ("statements that tend to injure the plaintiff in her trade, business or profession" constitute defamation *per se*).

The legal profession is one with high ethical and moral standards.  Attorneys are required to have only truthful communications with clients, tribunals, and third parties.  As a result, it is no surprise that employees of attorneys are held to a similarly high standard by their employers.  Simply put, attorneys will not employ a paralegal who they do not trust or believe is a "liar" or a "false accuser," as Ms. Kyle has been labeled by Defendant Lewis.  Further, even in Defendant Lewis's Motion to Disqualify, he lodges numerous false and baseless accusations of payments being made by Pierce Bainbridge to Ms. Kyle and her counsel in order to compel Ms. Kyle to lie.  *See* Dkt. No. 14 at 22.  Defendant Lewis further repeatedly asserts that the "lies" of Ms. Kyle are in some way connected to alleged financial improprieties by Pierce Bainbridge, once again without any basis in fact.  ¶ 86 fn. 4.  The additional accusations of lying for pay or financial motives constitute further defamation and heighten the defamatory effect.

### B.     Defendant's Statements Were Not Opinions

Finally, contrary to Defendant Lewis's argument, his defamatory statements are not non-actionable statements of opinion.  Defendant Lewis attempts to parse each statement individually to characterize the statements as supposed non-actionable opinions.  Under New York law, "a statement of opinion accompanied by a full recitation of the facts on which it is based will be deemed a pure opinion, ***while a statement of opinion that implies a basis in undisclosed facts is actionable 'mixed opinion.'***"  *Clark v. Schuylerville Cent. Sch. Dist.*, 807 N.Y.S.2d 175, 176–77 (3d Dept. 2005) (emphasis added).  "While a pure opinion cannot be the subject of a defamation claim, ***an opinion that implies that it is based upon facts which justify the opinion but are***

***unknown to those reading or hearing it is a 'mixed opinion' and is actionable***… What differentiates an actionable mixed opinion from a privileged, pure opinion is the implication that the speaker knows certain facts, unknown to the audience, which support the ***speaker's opinion and are detrimental to the person being discussed***… The dispositive inquiry is whether a reasonable reader could have concluded that the statements were conveying facts about the plaintiff." *Davis v. Boeheim*, 24 N.Y.3d 262, 269-270 (2014) (internal quotation marks and citations omitted) (emphasis added). Defendant Lewis has repeatedly called into question Ms. Kyle's work product and other individuals' opinions of her work product, called her a "liar," and described her as a "False Accuser" and her actions as a "disgraceful and racist weaponization of #MeToo." These are not opinions—they are factual labels that publicly attack her professional competence, honesty, and integrity, while attributing racist motives to her supposed lies. In addition, as discussed below in further detail, these statements are not covered by any litigation-related privilege.

Defendant's Motion to dismiss Plaintiff's defamation *per se* claims should be denied.

## III.   DEFENDANT LEWIS'S STATEMENTS ARE NOT PRIVILEGED UNDER NEW YORK CIVIL RIGHTS LAW § 74

Defendant Lewis argues that the claimed defamatory statements are fair and true reports of judicial proceedings that are protected under § 74 of the New York Civil Rights Law. *See* Dkt. No. 68 at 26-34. Civil Rights Law § 74 provides as follows:

> A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published. This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof.

Civil Rights Law § 74.  Defendant's statements do not constitute "reports" of judicial

proceedings, let alone "fair and accurate" reports of those proceedings.  Defendant Lewis's Civil

Rights Law § 74 defense also fails because this statutory privilege was not intended to protect

litigants who maliciously institute litigation to disseminate false statements with impunity.

> **A.    Defendant Lewis's Statements Are Not "Reports" of Judicial Proceedings Protected by Civil Rights Law § 74**

It is well-settled that Civil Rights Law § 74 only protects statements that are, in fact, a

report on a judicial, legislative, or other official proceedings.  *See Greenberg v. Spitzer*, 155 A.D.

3d 27, 43 (2d Dep't 2017).  It does not protect publications that "merely tell a story" that is

"based on rumors and gossip."  *See Keogh v. New York Herald Trib., Inc.*, 51 Misc. 2d 888, 274

N.Y.S.2d 302, 306 (Sup. Ct. 1966), *aff'd sub nom., Keogh v. New York Herald Trib.*, 28 A.D.2d

1209, 285 N.Y.S.2d 262 (1st Dep't 1967).  If the context in which the statements are made make

it impossible for the ordinary viewer to determine whether defendant was reporting on a judicial

proceeding, the absolute privilege does not apply.  *Saleh v. New York Post*, 78 A.D.3d 1149,

1151, 915 N.Y.S.2d 571 (2010) (internal citation omitted).  The mere "overlap between the

subject matter of the report and the subject matter of a proceeding does not suffice; the ordinary

viewer [] must be able to determine from the publication itself that the publication is reporting on

the proceeding."  *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 216 (N.D.N.Y. 2014); *see also Corp.*

*Training Unlimited, Inc. v. Nat'l Broad. Co., Inc.*, 868 F. Supp. 501, 509 (E.D.N.Y. 1994).  "A

report's mere mention of an official proceeding does not automatically extend the privilege to an

entire publication; the privilege may apply to some portions of a report and not others."  *Fine*, 11

F. Supp. 3d at 217; *see also Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d at 313 (S.D.N.Y.

2019).  Defendant Lewis's statements to multiple legal outlets cannot reasonably be construed as

a "report" of the various court filings.  Rather, his spinning unfounded and fabricated conspiracy theories, while calling Plaintiff a "liar" repeatedly and attacking her professional competence, are not connected to an attempt to accurately describe or characterize the allegations asserted in his various legal filings.

These statements were clearly intended to defame and harm Plaintiff, not to provide a fair and accurate report of these proceedings or the claims.  *See Keogh*, 274 N.Y.S.2d at 306 (finding publications not protected reports where "[t]hey merely tell a story" that is "based on rumors and gossip").  The mention of the various lawsuits in the articles does not rehabilitate Defendant Lewis's blatantly defamatory statements.  *See Wexler*, 374 F. Supp. 3d at 313; *Fine*, 11 F. Supp. 3d at 217 ("[A] report's mere mention of an official proceeding does not automatically extend the privilege to an entire publication …"); *Corporate Training*, 868 F. Supp. at 509-10 (no privilege where references to court proceedings in broadcast occurred "mostly in passing").

Moreover, Civil Rights Law § 74 does not protect statements that go further than the pleadings themselves.  *See Ocean State Seafood, Inc. v. Cap. Newspaper*, *Div, of Hearst Corp.*, 112 A.D.2d 662,666 (3d Dep't 1985) (Civil Rights Law§ 74 "does not apply when the news account of the judicial proceeding **is combined with other facts or opinions to imply wrongdoing**.") (emphasis added); *see also Morelli v. Wey*, No, 153011/16, 2016 WL 7386549, at *31 (N.Y. Sup. Ct. Dec. 16, 2016) (rejecting Civil Rights Law § 74 defense where the defamatory statements "appear to suggest more serious conduct").

At the very least, whether an ordinary person would consider Defendant Lewis's statements a "report" within the meaning of Civil Rights Law § 74 is a question of fact not appropriate for disposition on a motion to dismiss.  *See Wenz v. Becker*, 948 F. Supp. 319,324 (S.D.N.Y. 1996) (denying summary judgment where there were issues of material fact as to

14

whether the defamatory statement was a report of the proceeding); *Wexler*, 374 F. Supp. 3d at

313 (whether article was a "report" is a question of fact where it was "unclear whether []

statements [] were reporting on the allegations in [a] lawsuit or making an independent

accusation").

### B. Defendant Lewis's Statements Are Not "Fair and Accurate" Reports

Civil Rights Law § 74 only protects statements that fairly and accurately report on

judicial proceedings. *See Holy Spirit Ass'n for Unification of World Christianity v. New York

Times Co.*, 49 N.Y.2d 63, 67 (1979) (report must be "substantially accurate" to be privileged);

*see also Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 589

(S.D.N.Y. 2009). Whether a statement qualifies for such protection is a fact-specific inquiry that

is rarely appropriate for a motion to dismiss. *See Wexler*, 374 F. Supp. 3d 302, 311 ("A report is

not 'substantially accurate,' however, 'if it would have a 'different effect' on the mind of the

recipient than the 'actual truth.''") (quoting *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119

(2d Cir. 2005)); *Daniel Goldreyer, Ltd. v. Van de Wetering*, 217 A.D.2d 434, 436 (1995) (the test

is whether "the published account of the proceeding would have a different effect on the reader's

mind than the actual truth, if published."); *Karedes*, 423 F.3d at 119 (a "reasonable jury could

conclude that the article 'suggest[ed] more serious conduct than that actually suggested in the

official proceeding'").

Here, Defendant Lewis's statements are not "fair and accurate" because they imply more

conduct than actually alleged in his various actions and extend well beyond the allegations in his

pleadings. These statements include:

- On February 2, 2020, an article in *NBC News* quoted Defendant
  Lewis stating, "The firm exploited **false allegations, by a staffer
  attempting to save her job**, to defame me nationwide and discredit

my truthful allegations, which the firm has said: 'if true, would amount to criminal activity.'" ¶ 86 (emphasis added).

- On September 9, 2019, an article in the *New York Law Journal* quoted Lewis stating, "This is consistent with [LaVigne's] comments to me that the Putney report is inconclusive and that **nobody at the Firm believes the false accuser**." ¶ 86 (emphasis added).

- In the *ABA Journal* on August 6, 2020, Mr. Lewis stated, "The allegations are a **complete fabrication, abject lies**. This disgraceful and **racist weaponization of #MeToo** undermines real victims and detracts from a serious cause." ¶ 88 (emphasis added).

- Upon the denial of his Motion to Disqualify on November 12, 2020, an article about the ruling was posted in *Law360*. ¶ 99. In this article, Defendant Lewis is quoted as stating to the author: "**Jane Doe, a liar**, has worked at both law firms." *Id*. (emphasis added).

These statements are easily distinguished from *Biro*, cited by Defendant Lewis, because in that case the statements summarized or restated the allegations of the pleading. *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012). The statements made by Defendant Lewis go far beyond summarizing the allegations in the various complaints and instead attack Plaintiff's honesty and integrity, such that they would have a different effect on the average viewer. Where, as here, a defendant's out-of-court report on an unsubstantiated allegation implies that the allegation is true, a court may find that a report is not "fair and accurate." *See, e.g., Pisani v. Staten Island Univ. Hosp.*, 440 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006) ("[B]ecause the Court finds that a reasonable jury could decide that the[] statement was not a fair and true report, the Court cannot conclude that, as a matter of law, the [] statement is protected by the judicial proceeding privilege."). Defendant Lewis has made numerous unsubstantiated allegations in these publications, including that Ms. Kyle is a liar, a pawn being used by Pierce Bainbridge for pay, and that Ms. Kyle is somehow part of a scheme to cover up financial improprieties and then

16

has touted these defamatory statements as facts, clearly exceeding the bounds of a fair and accurate report.  ¶¶ 85-101.

Since Defendant Lewis's statements to various media outlets (*e.g.*, calling Plaintiff a "liar" repeatedly) would produce a different effect on the viewer than a report containing the allegations alleged in the various legal actions filed by Lewis, Civil Rights Law § 74 does not apply.  At a minimum, whether Lewis's would produce a different effect on the average viewer is a question of fact not proper for resolution on a motion to dismiss in the absence of documentary evidence that conclusively demonstrates otherwise.

C.     **Civil Rights Law § 74 Does Not Apply When Proceedings Are Designed to Defame**

Even if Defendant Lewis could legitimately *argue* that all his comments about Ms. Kyle's character and motivations were fair and accurate reports of the various complaints, Civil Rights Law § 74 does not apply to parties who abuse the judicial process to publicize defamatory allegations.  *See GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18 Civ. 5290 (CM), 2019 WL 1768965, at *5 (S.D.N.Y. Apr. 4, 2019) (The privilege does not "permit parties to take advantage of the privilege by instituting a judicial proceeding alleging false and defamatory charges only to then issue a press release publicizing those defamatory allegations."); *Willson v. Ass'n of Graduates of the U.S. Mil. Acad.*, 946 F. Supp. 294, 297 (S.D.N.Y. 1996) ("The privilege does not extend, however, to parties who maliciously institute a proceeding alleging false and defamatory charges and publicize them in the press.") (quoting  *McNally v. Yarnall,* 764 F. Supp. 853, 855 (S.D.N.Y.1991)); *Williams v. Williams*, 23 N.Y.2d 592, 599 (1969) ("[I]t was never the intention of the Legislature in enacting section 74 to allow 'any person' to maliciously institute a judicial proceeding alleging false and defamatory charges, and then circulate a press release or other communication based thereon and escape liability by invoking the statute."); *see also*

17

*Reszka v. Collins*, 136 A.D.3d 1299, 1300-01, (4th Dep't 2016) ("A party cannot [] maliciously commence a judicial proceeding alleging false and defamatory charges and then circulate a press release based on the same charges and escape liability by invoking Civil Rights Law § 74."); *Volpe v. Paniccioli*, 57 Misc. 3d 1219(A), 72 N.Y.S.3d 519, at *3 (N.Y. Sup. Ct. 2017) (denying dismissal because counterclaim "adequately alleged that plaintiff provided the complaint [to the press] and made public statements with malicious intent").  This distinguishes the instant case from those cited by Defendant Lewis, *Officemax* and *Rabiea*, as the plaintiffs in those cases made no allegations that the purpose of the lawsuit itself was to defame.  *Officemax Inc. v. Cinotti*, 966 F. Supp. 2d 74, 79 (E.D.N.Y. 2013); *Rabiea v. Stein*, 69 A.D.3d 700 (2d Dep't 2010).

Civil Rights Law § 74 does not apply "if it appears that the public policy goals of the statute are being thwarted by" the use official proceedings "as a device to protect a report thereof and thereby disseminate defamatory information."  *Halcyon Jets, Inc. v. Jet One Grp., Inc.*, 69 A.D.3d, 534-35 (2010) (*Williams* exception applies when litigation is merely "a device" to "disseminate defamatory information").  Defendant Lewis cannot use his various sham litigations (particularly his suit against Ms. Kyle) as a free pass to engage in defamatory and retaliatory activity.  *See Volpe*, 72 N.Y.S.3d 519; *Reszka*, 136 A.D.3d at 1300 ("A party cannot [] maliciously commence a judicial proceeding alleging false and defamatory charges and then circulate a press release based on the same charges and escape liability by invoking" New York's fair report privilege; affirming denial of motion to dismiss).

Indeed, neither the goals of the law of defamation, nor those of Civil Rights Law § 74, would be furthered by allowing Defendant Lewis to escape liability for his continual blatantly harassing misconduct.  *See Williams*, 23 N.Y.2d 592 at 337 ("Society has a pervasive and strong

interest in preventing and redressing attacks upon reputation, and the courts are delegated with the responsibility of protecting that right.") (internal citations omitted).  Mr. Lewis's claims against Ms. Kyle are based entirely on her legally protected activity in reporting his harassment and a sworn affidavit she gave which parallels her original account regarding his discriminatory conduct—his motivation was pure defamation and intimidation in order to force her to falsely recant.  This sort of legal filing is not protected by Civil Rights Law § 74.

Furthermore, Plaintiff's allegations are more than sufficient to satisfy the common-law malice requirement.  Specifically, Plaintiff alleges that Defendant Lewis published (and continues to publish during this case) the defamatory statements against Plaintiff notwithstanding his knowledge of their falsity and that he did so to damage Plaintiff's reputation and punish her for coming forward with her sexual harassment and assault allegations and refusing to lie under oath to support Defendant Lewis's claims.  ¶¶ 82-101.  These factual allegations are more than sufficient to allege malice and improper motivation.  *See Sullivan v. Am. Airlines, Inc.*, 80 A.D.3d 600,602 (201l) ("[T]riable issue of fact as to whether American acted with malice, because there was evidence indicating that American knew that the allegedly defamatory statements were false."); *see also Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 365 (2007) (malice includes allegations that a party acted for spite or with a knowing or reckless disregard of a statement's falsity).  Simply put, Plaintiff "has no obligation to show evidentiary facts to support [her] allegations of malice on a motion to dismiss pursuant to CPLR 321 l (a)(7)."  *See Greenberg*, 155 A.D.3d at 55-56.  However, Defendant Lewis exposed his own malice towards Ms. Kyle when filing the instant motion.  Defendant Lewis wrote that "If Defendant had the requisite 'power to control the employee's conduct,' Kyle would have been fired, not Lewis." *See* Dkt. No. 68 at 16.  This alone is powerful evidence of improper retaliatory motive under all

relevant causes of action, including for purposes of this privilege. Defendant Lewis's repeated recitation of wild, unsupported allegations of a paid conspiracy against him by Ms. Kyle and others (with no apparent evidence after years of litigation) also demonstrate knowledge of falsity and recklessness as to the veracity of his allegations.

Whether Defendant Lewis intended to use various court complaints he has filed as a device to disseminate defamatory comments about Plaintiff "is a factual issue that cannot be decided at the motion to dismiss phase." *See Halcyon Jets, Inc.*, 69 A.D.3d at 534-35; *Volpe*, 72 N.Y.S.3d 519; *see also Flomenhaft v. Finkelstein*, 127 A.D.3d 634, 638 (1st Dep't 2015) ("[W]here there is a question as to the applicability of [] privilege, the issue should be decided at trial."); *Patrick v. G2 FMV, LLC*, Index No. 152318/2015, 2016 WL 320622, at *8 (N.Y. Sup. Ct. Jan. 27, 2016) ("[Section 74] does not require dismissal because a trier of fact could conclude that the UA Complaint was a sham maliciously filed solely to defame [].").

## IV.  PLAINTIFF'S NYSHRL CLAIMS OF DISCRIMINATION AND RETALIATION ARE TIMELY

"[T]he statute of limitations under the NYSHRL and the NYCHRL is three years." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 248-249 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013); N.Y. C.P.L.R. 214(2); N.Y.C. Admin. Code § 8–502(d); *Koerner v. State of New York*, 62 N.Y.2d 442 (1984) (holding that the three-year statute of limitations applies to discrimination claims under the NYSHRL); *Langella v. Mahopac Cent. Sch. Dist.,* No. 18 Civ. 10023 (NSR), 2020 WL 2836760, at *15 (S.D.N.Y. May 31, 2020) ("In general, claims arising under the NYSHRL are subject to a three-year statute of limitations."); *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 436 (S.D.N.Y. 2016) ("Claims brought under the NYHRL are subject to a three-year statute of limitations."). As these cases show, the statute of limitations of three years was applicable at the time of the first alleged discriminatory incidents

in July 2018.  As the instant lawsuit was filed on August 6, 2020, all of Ms. Kyle's claims were timely filed.

Although Defendant Lewis is correct that a one-year statute of limitations applies under N.Y. Exec. Law § 297, he is incorrect as to its application, as that section of the NYSHRL only applies to filings of complaints with the New York State Division of Human Rights, and **not** the claims at issue herein.  *Mudholkar v. Univ. of Rochester*, 261 F. App'x 320, 323 (2d Cir. 2008) ("New York State's one-year statute of limitations applies to *state* claims filed with the DHR.").

## V.   SEXUAL HARASSMENT AND ASSAULT ARE A FORM OF SEX DISCRIMINATION UNDER THE NYSHRL

Defendant Lewis's contention that Ms. Kyle was not subjected to any form of unlawful discriminatory practice is wholly without merit.  "Sexual harassment claims brought under a hostile work environment theory under the NYSHRL are judged by the same standard as their federal counterparts in Title VII."  *McHenry v. Fox News Network, LLC*, No. 19 Civ. 11294 (PAE), 2020 WL 7480622, at *5 (S.D.N.Y. Dec. 18, 2020) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013)).  "A claim of 'hostile environment' sexual harassment is a form of sex discrimination that is actionable under Title VII."  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 57 (1986); *Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) ("[W]hen a supervisor *sexually harasses a subordinate because of the subordinate's sex,* that supervisor 'discriminate[s]' on the basis of sex.").  Sexual harassment has long been recognized as a form of discrimination on the basis of sex.  *Meritor Sav. Bank,* 477 U.S. 57, 57.

To survive a motion to dismiss, a plaintiff must only allege facts showing that "she was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'"  *McHenry*, 2020 WL 7480622, at *6 (citing *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).  An employer violates the NYSHRL

where it subjects an employee to conduct that is "sufficiently severe or pervasive to alter the conditions of [the employee's] employment and create an abusive working environment." *Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).  Determining whether the offensive conduct meets the legal threshold is a fact-intensive inquiry that rests on a host of factors.  *Id*. at 148.

The employee is not required to show that the environment was "unendurable" or "intolerable," or that her "psychological well-being" was damaged.  *Id*. (internal citations omitted).  On the contrary, the Second Circuit has cautioned that "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases."  *Id*. (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)).  "Whenever the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse, it is actionable under Title VII, so long as the employee subjectively experienced a hostile work environment."  *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir. 1997).

"[T]he Supreme Court and lower courts 'uniformly' recognize sexual harassment claims as a violation of Title VII, notwithstanding the fact that, as evidenced by the district court decision in *Barnes*, this was not necessarily obvious from the face of the statute."  *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 114 (2d Cir. 2018) (citations omitted).  It is long settled that "[u]nwelcome sexual advances" meet even the higher federal threshold.  *Redd,* 678 F.3d 166, 175 (quoting *Meritor*, 477 U.S. at 65).  Plaintiff also brings similar claims under the NYCHRL which Defendant Lewis has not moved to dismiss.  The standard under the NYCHRL is even more permissive than under the NYSHRL.  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013).  The employee need not prove that the conduct was severe or

pervasive; she need only show that she was subjected to "unwanted gender-based conduct." *McHenry,* 2020 WL 7480622, at \*6; *see Mihalik*, 715 F.3d at 111 ("Even 'a single comment that objectifies women" may be actionable) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 84 (1ˢᵗ Dep't 2009). The horrific sexual assault followed by a campaign of intimidation and disparagement that Ms. Kyle suffered at the hands of Defendant Lewis clearly meets this standard. "The Second Circuit has 'cautioned against setting the bar too high' for hostile work environment claims." *Id*. (quoting *Terry*, 336 F.3d at 148). This is particularly so at the pleadings stage before any discovery has been conducted.

## VI.   DEFENDANT LEWIS'S HARASSMENT, POST-EMPLOYMENT RETALIATION, AND OTHER CONDUCT IS ACTIONABLE RETALIATION

Under Title VII and the NYSHRL, it is well-settled that retaliatory acts are "not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). Rather, these statutes prohibit all conduct that "well might . . . dissuade[]a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68. Moreover, the expansive NYCHRL makes it unlawful to retaliate "in any manner." *Williams,* 61 A.D.3d 62, 70. Accordingly, no "challenged conduct" may "be categorically rejected as nonactionable." *Id*. at 71.[2] Threats, spreading criticism about her work performance, and the filing of a clearly retaliatory lawsuit fall squarely in the definition of an actionable retaliation.

---

[2]    In 2005, the legislature amended the NYCHRL to make clear that the statute "shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably worded." *Williams*, 61 A.D.3d at 66 (quoting Local Law No. 85 [2005] City of NY [Restoration Act], 7).

Further, courts in this Circuit have routinely permitted accusations of retaliatory counterclaims to proceed, which are akin to the retaliatory lawsuit filed by Defendant Lewis against Ms. Kyle (and this is so regardless of whether or not the employer's claims are baseless). *See Rodriguez v. Nat'l Golf Links of Am.*, No. 19 Civ. 7052 (PKC) (RML), 2020 WL 3051559 (E.D.N.Y. Jun. 8, 2020); *Leary v. Al-Mubaraki*, No. 18 Civ. 0048 (LTS) (HBP), 2019 WL 4805849 (S.D.N.Y. Sept. 30, 2019); *Santi v. Hot In Here, Inc.*, No. 18 Civ. 03028 (ER), 2019 WL 290145 (S.D.N.Y. Jan. 22, 2019).

To be sure, the "the law on this issue is not settled" and there are cases holding that a counterclaim should lack merit in order to qualify as adverse. *Rodriguez*, 2020 WL 3051559, at *5. However, none of these cases limit the NYCHRL's unique provision prohibiting retaliation "in any manner." *See Sherman v. Fivesky, Inc.*, No. 19 Civ. 8015 (LJL), 2020 WL 5105164 (S.D.N.Y. Aug. 31, 2020) (Title VII); *Grauer v. UBS Fin. Servs., Inc.*, No. 07 Civ. 5450 (LAP), 2008 WL 11398936 (S.D.N.Y. Dec. 17, 2008) (NYSHRL). In addition, the contrary cases ignore the central focus of a retaliation claim. The issue is not whether an employer had the ability to take a particular action but, rather, whether he took such action for an unlawful purpose. Defendant Lewis's retaliatory lawsuit was filed solely to harass, defame, and silence Plaintiff because she came forward with her allegations of sexual assault and harassment. His defamatory statements had no purpose other to harass Plaintiff and harm her reputation. Defendant Lewis's demand that Plaintiff recant in order for him to withdraw the suit and his admissions in connection with this Motion that the lawsuit was "for" and in response to Plaintiff's filing of an affidavit recounting his discriminatory misconduct prove the improper defamatory and retaliatory motive behind his lawsuit against Ms. Kyle.

## VII.   DEFENDANT LEWIS, A PARTNER, WAS PLAINTIFF'S SUPERVISOR

The Amended Complaint clearly alleges that Defendant Lewis was Plaintiff's supervisor.

Defendant Lewis ignores numerous facts that prove this element that are far from "conclusory,"

as he asserts.  *See* Dkt. No. 68 at 16.  These specific allegations include, by way of example only:

- Defendant Lewis threatened Plaintiff with the termination of her employment if she spoke about the sexual assault.  ¶ 36.

- An article written by counsel for Defendant Lewis in other actions states that Defendant Lewis was "an Equity Partner and Co-Founder of the New York Office" at Pierce Bainbridge.  ¶ 106.

- Defendant Lewis, as a partner and senior attorney, had the power to and did give work assignments to and manage the workload of Plaintiff and other employees of Pierce Bainbridge.  ¶ 109.  In an assignment channel on Slack, Defendant Lewis would regularly request help to get support on cases, including by requesting research.  *Id*.

- Defendant Lewis also assigned work to Plaintiff directly, including work on motions and spreadsheets.  ¶ 110-113.

- Defendant Lewis also spoke to other Partners at Pierce Bainbridge about Plaintiff's job performance and had significant influence over perceptions of her work.  ¶ 114.

- Defendant Lewis was an active member of the Recruiting Committee at Pierce Bainbridge and had, at least, substantial influence over the hiring of employees.  ¶ 115.  Defendant Lewis coordinated the hiring of an Associate in or about late summer/early fall 2018.  *Id*.  Defendant Lewis was also involved in the hiring of a Partner at Pierce Bainbridge in the fall of 2018.  *Id*.

- Defendant Lewis lobbied for the Firm to terminate the employment of a high-ranking employee at the Firm and, upon information and belief, openly told other partners to stop working with her.  ¶ 116. Upon further information and belief, when the Firm ultimately terminated the employee, Defendant Lewis coordinated her exit from the Firm.  *Id*.

Under the NYSHRL, "an individual is properly subject to liability for discrimination when that

individual qualifies as an 'employer.'"  *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 57

(2d Cir.2012) (quoting N.Y. Exec. Law § 296(1)); *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 394–95 (S.D.N.Y. 2019).   "An individual qualifies as an 'employer' when that individual has an ownership interest in the relevant organization or the 'power to do more than carry out personnel decisions made by others.'"   *Townsend*, 679 F.3d at 57 (quoting *Patrowich v. Chem. Bank*, 63 N.Y.2d 541 (N.Y.1984) (*per curiam*)); *see also Schaper*, 408 F. Supp. 3d at 394-95; *Messer v. Fahnestock & Co. Inc.*, No. 03 Civ. 4989 (ENV) (JMA), 2008 WL 4934608, at *9 (E.D.N.Y. Nov. 18, 2008); *Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 268 (S.D.N.Y. 2020); *Chamblee v. Harris & Harris, Inc.*, 154 F.Supp.2d 670, 676–77 (S.D.N.Y.2001); *see also Wilk v. VIP Health Care Servs., Inc.*, No. 10 Civ. 5530 (ILG) (JMA), 2012 WL 560738, at *8 (E.D.N.Y. Feb. 21, 2012) (holding that mere "influence over hiring and firing decisions" sufficient to survive a motion to dismiss.)

## VIII.   DEFENDANT LEWIS IS INDIVIDUALLY LIABLE FOR HIS OWN CONDUCT

Under both state and city laws, "individual defendants may be sued in their personal capacities."   *Lopes v. Caffe Centrale LLC*, 548 F. Supp. 2d 47, 54 (S.D.N.Y. 2008) (citing *Feingold v. New York*, 366 F.3d 138, 157-59 (2d Cir. 2004)).   An individual is personally liable where, *inter alia*, he "actually participates in the conduct giving rise to a discrimination claim." *Feingold*, 366 F.3d at 157 (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds by *Burlington Indus., Ind. v. Ellerth*, 524 U.S. 742 (1988)).

"The NYSHRL also provides that it is 'an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article.'"   *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) (citing N.Y. Exec. Law § 296(7)).   "In addition to creating liability for direct discrimination, the NYSHRL makes it

unlawful for any person to retaliate against someone who has opposed or filed a complaint of discrimination." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 533 (S.D.N.Y. 2015) (citing N.Y. Exec. Law § 296(7)).

The NYCHRL makes it unlawful for "an employer or an employee or agent thereof, because of the actual or perceived ... gender[]... of any person ... to discriminate against such person in compensation or in terms, conditions or privileges of employment." *Malena*, 886 F. Supp. 2d at 366 (citing NYCHRL § 8–107(1)(a)). Therefore, the NYCHRL provides for individual liability of an employee "regardless of ownership or decision making power." *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 395 (S.D.N.Y. 2019) (citations omitted); *Ahmad v. New York City Health & Hosps. Corp.*, No. 20 Civ. 675 (PAE), 2021 WL 1225875, at *29 (S.D.N.Y. Mar. 31, 2021); *Fitchett v. City of New York*, No. 18 Civ. 8144 (PAE), 2021 WL 964972, at *8 (S.D.N.Y. Mar. 15, 2021); *Beards v. BronxCare Health Sys.*, No. 18 Civ. 12216 (PAE), 2021 WL 704177, at *10 (S.D.N.Y. Feb. 23, 2021).

Although there is divided authority among this Court, "an individual may be liable under § 296(6) for aiding and abetting an unlawful discriminatory practice of his employer even where his conduct serves as the sole predicate for the employer's liability." *Maher v. All. Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 262–63 (E.D.N.Y. 2009); *see also Lewis v. Triborough Bridge and Tunnel Auth.*, No. 97 Civ. 0607, 2001 WL 46986, at *2 (S.D.N.Y.2001) (declining to follow *Hicks v. IBM*, 44 F. Supp. 2d 593 (S.D.N.Y. 1999) and stating that "this Court follows the majority of decisions in this district in recognizing that an individual can be liable for aiding and abetting his own discriminatory conduct"); *Salvatore v. KLM Royal Dutch Airlines*, No. 98 Civ. 2450 (LAP), 1999 WL 796172, at *8 (S.D.N.Y. Sept. 30, 1999) (declining to dismiss claims against individual defendant under § 296(6) where defendant was "the sole KLM employee

alleged to have engaged in the discriminatory conduct").  Courts have found that when an individual "actually participated" in the discriminatory conduct producing the hostile work environment, a defendant "may be held liable for aiding and abetting his own conduct under § 296(6)."  *Maher*, 650 F. Supp. 2d at 262–63.

## IX.   DEFENDANT LEWIS'S STATEMENTS ARE NOT CONFIDENTIAL UNDER F.R.E. § 408

Defendant Lewis argues that statements made by him to Plaintiff over the course of settlement negotiations are confidential and inadmissible under Fed. R. Evid. § 408.  *See* Dkt. No. 68 at 29-30.  However, Defendant Lewis cannot use the context of a settlement negotiation to shield himself from liability for unlawful actions committed and related statements made during the course of those discussions.  *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293 (6th Cir. 1997) (threats made in settlement negotiations were admissible; Rule 408 is inapplicable when the claim is based upon a wrong that is committed during the course of settlement negotiations); *see also Zurich Am. Life Ins. Co. v. Nagel*, No. 20 Civ. 11091 (JSR), 2021 WL 1877364, at *2 (S.D.N.Y. May 11, 2021).  Indeed, "wrongful acts are not shielded because they took place during compromise negotiations."  *Id*.  The communication by Defendant Lewis was not an offer to settle for valuable consideration, but rather he dangled dismissal of the retaliatory action against Plaintiff in exchange for a perjured statement that contradicted other sworn statements she had made.  ¶ 96.  Defendant Lewis cannot shield his unlawful coercive activity by dressing it up as a settlement offer and using his retaliatory claims as leverage to force Plaintiff to recant her legally protected complaints of discrimination.  This is clearly not why the protections afforded by Fed. R. Evid. § 408 exist and goes beyond their bounds.  As was the case in *Zurich*, this Court has determined that Fed. R. Evid. § 408 "does not

preclude the use of [settlement communications] to prove a cause of action arising from the [communication] itself."  2021 WL 1877364, at *3.

"[I]t is well established that Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim."  *Williams v. Regus Mgmt. Grp., LLC*, No. 10 Civ. 8987, 2012 WL 1890384, at *3 (S.D.N.Y. May 15, 2012) (citing *Uforma,* 111 F.3d at 1293–94) (internal quotation marks omitted); *see, e.g., Carney v. Am. Univ.,* 151 F.3d 1090, 1095 (D.C.Cir.1998) (statements from settlement negotiations admissible to prove a separate claim of retaliation); *Eisenberg v. Univ. of New Mexico.,* 936 F.2d 1131, 1134 (10th Cir.1991) (affidavit obtained in settlement negotiations admissible to impose Rule 11 liability); *Urico v. Parnell Oil Co.,* 708 F.2d 852, 854–55 (1st Cir.1983) (evidence of settlement negotiations admissible to show interference with efforts to mitigate damages); *Master–Halco, Inc. v. Scillia, Dowling & Natarelli, LLC,* 739 F.Supp.2d 125, 133–34 (D.Conn. 2010) (settlement correspondence relating to different claims admissible); *Carr v. Health Ins. Plan of Greater New York, Inc.,* No. 99 Civ. 3706 (NRB), 2001 WL 563722, at *4 (statements from settlement negotiations admissible to prove a separate claim of retaliation); *Resol. Tr. Corp. v. Blasdell,* 154 F.R.D. 675, 681 (D.Ariz.1993) (evidence of settlement negotiations admissible to prove retaliatory motive); *cf. Pace v. Paris Maint. Co.,* 7 F. App'x. 94, 97 (2d Cir.2001) (summary order) (holding that the plaintiff's attempt to introduce a statement from settlement negotiations to support an independent claim of retaliation "might have some force" if the plaintiff had evidence of an unlawful motive).

Lewis was attempting to position Plaintiff to be accused down the line of perjury by signing contradictory sworn statements and/or punish her for providing reports and testimony

29

regarding his discriminatory conduct.  Where, as here, settlement communications are retaliation in and of themselves, they are not considered to be confidential.

## X.   THE COURT SHOULD DISREGARD EXTRINSIC DOCUMENTS SUBMITTED BY DEFENDANT LEWIS

In determining a motion to dismiss, a court's consideration is "limited to the complaint and documents attached thereto."  *NorGuard Ins. Co. v. Lopez*, No. 15 Civ. 5032 (DRH)(AYS), 2017 WL 354209, at *5 (E.D.N.Y. Jan. 24, 2017).  Courts regularly disregard extrinsic material submitted in support of a motion to dismiss.  *See, e.g., Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368, 382 (S.D.N.Y. 2013).  Defendant selectively relies upon voluminous extraneous information, including documents filed in other actions and correspondence by his own attorneys.  These documents are not attached to the Amended Complaint or incorporated by reference, and Defendant Lewis's attempt to try to case in a motion to dismiss is inappropriate. The Court should disregard these extraneous materials.  *See id*.

## XI.   PLAINTIFF'S DEFAMATION CLAIMS ARE NOT TIME-BARRED

Plaintiff filed her initial Complaint on August 6, 2020.  *See* Dkt. No. 1.  "A claim for defamation [in New York] is subject to a one-year statute of limitations...."  *Goldman v. Barrett*, No. 15 Civ. 9223 (PGG), 2016 WL 5942529, at *9 (S.D.N.Y. Aug. 24, 2016) (citations omitted). Defendant Lewis has made several false and defamatory remarks since August 6, 2019, which are detailed in the Amended Complaint.  *See* ¶¶ 85-94.  Plaintiff does not seek to hold Defendant liable for defamation for remarks made prior to August 6, 2019.  These statements were included in the Complaint as evidence of recklessness, malice, and intent.

## CONCLUSION

For the reasons set forth above, Defendant Lewis's Motion should be denied.

Dated:  June 17, 2021
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
      Lawrence M. Pearson
      Lindsay M. Goldbrum

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845
lpearson@wigdorlaw.com
lgoldbrum@wigdorlaw.com

*Counsel for Plaintiff*

31